# STATE OF MICHIGAN

# COURT OF APPEALS

PETER L. CONWAY, PC.,

       Plaintiff/Counter-Defendant-
       Appellant,

v

EASTERN LAKES TRANSPORT MUSEUM,

       Defendant/Counter-Plaintiff/Third-
       Party Plaintiff-Appellee,

and

RALPH D. GILPIN, DENNIS GARNER,
ANDREW ROBINSON, GERALD B. SMITH,
GERALD L. FANTINI, LARRY L. HARTLEY,
and ROBERT T. JONES,

       Defendants-Appellees,

and

PETER L. CONWAY,

       Third-Party Defendant.

UNPUBLISHED
March 19, 2015

No. 319011
Lapeer Circuit Court
LC No. 10-042747-CK

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

PER CURIAM.

       Plaintiff[1] appeals by right the trial court's order denying its motion for sanctions pursuant to MCR 2.114 and MCL 600. 2591. We affirm.

---

[1] Attorney Peter L. Conway was not named, individually, as a plaintiff. Therefore, and for ease of reference, we use the term "plaintiff" to refer to the law firm of "Peter L. Conway, P.C." We

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This action initiated with a claim by plaintiff for unpaid legal fees. The following is a brief review of the underlying facts and litigation. In 2004, defendants[2] retained plaintiff to perform legal services concerning litigation involving the Yankee Air Force, Inc. ("YAF") and a certain parcel of property referred to as "the Farmhouse" property. Apparently, a breakdown in the attorney-client relationship compelled plaintiff to withdraw as defendants' counsel on March 1, 2010. Plaintiff brought this action on April 30, 2010, to collect unpaid attorney fees from defendants in the approximate amount of $95,000.

In answering the complaint, defendants essentially admitted that they owed a "reasonable value" to plaintiff in unpaid legal fees, but denied that the amount requested was reasonable. Defendants alleged that plaintiff failed to credit them for payments made on their account. In addition, defendants pleaded four affirmative defenses.[3] Defendants' answer and affirmative

refer to third-party defendant, Peter L. Conway, individually, as "Conway." We refer to defendant/counter-plaintiff/third-party plaintiff, Eastern Lakes Transport Museum, as "ELTM." The term "defendants," in the plural, refers to ELTM and the individual defendants, collectively.

[2] Defendant ELTM is the successor in interest to the Ad Hoc Membership Group ("Group"), a non-profit corporation. Individual defendant Ralph D. Gilpin was the resident agent of the Group. The other individual defendants were involved with the Group in various capacities. All individual defendants had provided written guarantees of costs and legal fees incurred by ELTM.

[3] Defendants pleaded the following affirmative defenses:

> FIRST. Fraud in the Inducement. Beginning around 2007 Plaintiff led Defendant down the "primrose path" with assurances that the running billings need not be worried about. He gave the same assurance to Jan L. Herrick, Esq. Defendant relied on Plaintiff's assurance that a sizeable recompense would be available from winning the Ad Hoc case. Plaintiff now demands payment in full of nearly one hundred thousand dollars knowing full well that Defendants, jointly or severally, cannot produce that sizeable a sum now or in the future without a bankruptcy protection. Further, Defendant demanded that Plaintiff rework his billings to reflect what Defendant asserts are un-necessary services, error billings and similar errata. Plaintiff has refused to entertain the requests.

> SECOND. Failure to accept Defendant's instructions in more than one instance. Plaintiff's specific instructions as to goals to be accomplished were brushed aside thereby causing an inflation of the billing totals when Plaintiff chose different routes which satisfied him but were inimical to Defendant's interests.

> THIRD. Tortious Interference with a Business Proposition. Plaintiff was instructed to move the Court in the Ad Hoc matter to release a certain deed from escrow, the Ad Hoc Committee having since acquired the necessary IRS classification. Plaintiff refused to do so offering several vague excuses. Whether the Court would have granted the Motion is immaterial for this matter. Plaintiff

defenses were signed by defendant Gilpin, as "attorney for defendants."[4] Gilpin testified that he came out of a 20-year retirement to prepare and file the answer to plaintiff's complaint.

During the course of litigating plaintiff's claim for unpaid legal fees, ELTM filed a separate legal malpractice action against plaintiff. The trial court declined to consolidate the two actions and dismissed the separate legal malpractice action, and instead permitted ELTM to file a counterclaim and third-party claim within the context of the instant action. In its counterclaim against plaintiff and third-party complaint against Conway, ELTM alleged that during the YAF litigation, the deed to the "Farmhouse" was transferred to ELTM and then placed in escrow. ELTM alleged that plaintiff and Conway negligently failed to pursue a motion to have that deed released from escrow. As a result, ELTM alleged that it lost the opportunity to sell that property to an interested purchaser.

Plaintiff filed several motions for summary disposition in the instant case, and the trial court ultimately granted summary disposition in favor of plaintiff on both its primary claim and on ELTM's counterclaim for legal malpractice. Defendants satisfied the resulting judgment, which totaled approximately $96,600, in favor of plaintiff.

Following the entry of the final summary disposition order, plaintiff filed a motion for sanctions. Plaintiff argued in part that under the offer of judgment rule, MCR 2.405, it was entitled to recoup costs in the amount of $21,860, which represented the costs incurred by

> was duty bound to so Move the Court at ELTM's request, such being legal and necessary for a decision. Failure to so Move caused Defendant to lose a favorable property sale to an interested buyer for cash, an amount sufficient to pay off Plaintiff up to that moment in the AD Hoc case underling the present matter. [This Court was moved to do so in February, 2010, but deferred the question for trial, on the false assertion of then Defendant that the Yankee AF bylaws prohibited such a transaction. Said Yankee AF objection evaporated in March, 2010, when the removal was accomplished.] [Sic.]
>
> FOURTH. Wrongful Conversion. On more than one occasion Plaintiff discarded Defendant's instructions in the Ad Hoc matter as to goals to be accomplished, instead substituting his own and issuing his own instructions to Defendant to gain the result he wanted. This tactic effectively converted the case in chief from Defendant's control to that of Plaintiff. The result was that Plaintiff's billings to Defendant escalated and Defendant is now demanded to pay for Plaintiff's frolic and detour in the prosecution of Defendant's underlying civil case. Attempts to discuss these objections with Plaintiff have brought rejection. Case in point: arranging a second "facilitation" over Defendant's objection (which failed) then attempting to arrange a third one against Defendant's specific refusal to participate further in a failed strategy.

[4] Indeed, defendant Gilpin is a licensed attorney in good standing in the State Bar of Michigan. See http://www.michbar.org/memberdir/detail.cfm?PID=26373 (last accessed February 24, 2015).

plaintiff after defendants rejected plaintiff's January 19, 2011 counter-offer of judgment. Plaintiff also sought sanctions under MCR 2.114 and MCL 600.2591, arguing that it was entitled to an award of $80,607.50, representing the value of the attorney time spent (by plaintiff or Conway) defending against defendants' allegedly unsupportable affirmative defenses, as well as the amount of attorney fees incurred by plaintiff having retained the services of an attorney to defend against the allegedly frivolous counterclaim for legal malpractice.

Following a two-day evidentiary hearing, the trial court found that plaintiff was entitled to costs pursuant to MCR 2.405 in the amount of $27,720; however, finding that defendants' filings were not frivolous, it declined to assess sanctions pursuant to MCR 2.114 or MCL 600.2591. The court stated specifically:

> Under statute and court rule, again, an attorney and the represented party have an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of the alleged claim before signing any document. Whether an inquiry was reasonable is determined by an objective standard. Reasonableness is determined by the efforts taken in investigating a claim before filing suit, and the determination of reasonable inquiry depends on the facts in the case. Subjective good faith is irrelevant. However, alleged facts that are subsequently determined to be false do not invalidate a prior reasonable inquiry. Plaintiff appears to argue that the Defendants' legal position is devoid of merit and therefore frivolous pursuant to MCL 600.2591.
>
> This Court disagrees. This Court determines that the Defendants' complaint for malpractice was not frivolous under sections of MCL 600.2591. Although Defendants' theory was unsuccessful, this Court does not find it to be completely devoid of legal merit, and there is nothing in the record to support a finding that Defendants' primary purpose was to either harass, embarrass, or injure the Plaintiff, or that the Defendants had no reasonable basis to believe that the facts underlying its legal position were in fact true. This Court is well aware of the fact that the Defendants had a right to contest damages or contest the imposition of specific remedy. This Court specifically finds that the Defendants had no malicious or evil intent in filing their complaint. Absent the finding of wrongful intent, the Defendant shall not be penalized for having pursued their rights in judicial forums. Therefore, based upon this analysis Plaintiff's motions for sanctions is considered and denied.

Plaintiff now appeals the trial court's resulting order denying plaintiff's motion for sanctions under MCR 2.114 and MCL 600.2591.

## II. STANDARD OF REVIEW

We review a trial court's findings regarding whether an action is frivolous for clear error. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*. The interpretation of statutes and court rules, such

-4-

as MCL 600.2591 and MCR 2.114, is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

## III. SANCTIONS

Plaintiff argues that sanctions were warranted because ELTM's counterclaim for legal malpractice, their four asserted affirmative defenses, and the allegation that defendants had failed to receive credit for payments made to plaintiff, each was wholly frivolous, and that plaintiff was therefore entitled to sanctions pursuant to MCR 2.114 and MCL 600.2591. MCR 2.114(D) provides that the signature of an attorney or party on a document, constitutes a certification by the signer that:

> (1) he or she has read the document;

> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

MCR 2.114(E) permits the court to fashion an appropriate sanction for filing a document in violation of MCR 2.114. In addition to sanctions under MCR 2.114(E), MCR 2.114(F) provides that a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). Pursuant to MCR 2.625(A)(2), if the court finds that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591. That statute states that "if a court finds that a civil action . . . was frivolous, the court that conducts the civil action shall award the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." MCL 600.2591(1).

Whether a claim is frivolous within the meaning of MCR 2.114(F) and MCL 600.2591 will depend upon the facts of the case. *Kitchen*, 465 Mich at 663. MCL 600.2591(3) defines "frivolous" to mean that at least one of the following is met: (1) the primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party, (2) the party had no reasonable basis to believe that the facts underling the party's legal position were in fact true, or (3) the party's legal position was devoid of arguable legal merit. MCL 600.2591(3). Finally, the mere fact that a party did not ultimately prevail does not render the legal position frivolous. *Id*. at 662.

## A. COUNTERCLAIM FOR LEGAL MALPRACTICE

Applying these principles to the facts in this case, we conclude that the trial court did not clearly err when it found that ELTM's counterclaim for legal malpractice was not frivolous.[5] Plaintiff argues vociferously that the counterclaim lacked legal merit; yet nowhere does plaintiff articulate that the counterclaim was "interposed for [an] improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation," MCR 2.114(D)(3), or that "the primary purpose in initiating the [counterclaim] was to harass, embarrass, or injure" plaintiff. MCL 600.2591(3)(a)(*i*). The testimony at the evidentiary hearing supports a finding that the real purpose in pursuing the legal malpractice claim was to reduce the amount of outstanding and unpaid legal fees owed to plaintiff, and the record reflects that defendants believed that their asserted positions made such a reduction appropriate. While ELTM failed to demonstrate that its positions made a reduction in legal fees appropriate, the trial court did not clearly err in finding that ELTM did not violate the standards of MCR 2.114(D)(3)[6] or MCL 600.2591(3)(a)(*i*).

Thus, the remaining issues are whether ELTM "had no reasonable basis to believe that the facts underling [its] legal position were in fact true," and whether ELTM's "legal position was devoid of arguable legal merit." MCL 600.2591(3).[7] We conclude that the trial court did not clearly err when it concluded that the counterclaim for legal malpractice claim did not violate these standards.

The legal malpractice claim was premised on the assertion that plaintiff committed malpractice when, in the YAF litigation, it failed to pursue a motion seeking release from escrow of the Farmhouse deed. ELTM alleged that because the motion was not filed, it was unable to sell the Farmhouse in 2008, causing a loss in revenue. Plaintiff argued that the legal malpractice claim was meritless because ELTM was unable to prove that had the motion been filed, it would have been granted. Indeed, plaintiff notes that when the motion to release the deed from escrow was pursued in 2010, it was unsuccessful and the trial court ruled that ELTM had no rights to the Farmhouse property. Plaintiff further argues that plaintiff's failure to bring the motion could not

---

[5] Although plaintiff at times refers to both the counterclaim against it and the third-party complaint against Conway, its argument appears to apply only to the counterclaim, and Conway is not individually a party to this appeal. Regardless, however, of whether plaintiff intends its argument to also apply to the third-party complaint, it would not alter our analysis.

[6] Plaintiff thus has not demonstrated an "improper purpose as required by MCR 2.114(D)(3). That element is the third of three required elements for a finding of frivolousness under MCR 2.114(D). Inasmuch as the court rule joins those elements by the word "and," all three requirements must be shown, see *Amerisure Ins Co v Plumb*, 282 Mich App 417, 428; 766 NW2d 18 (2009), we therefore need not address the other elements required under that court rule.

[7] Unlike MCR 2.114(D)(3), MCL 600.2591(3) describes "frivolousness" as meaning that "at least 1" of the specified conditions is met.

have been a proximate cause of any damages to ELTM. However, the actual events that transpired are more complex.

In the YAF case, the trial court, on January 17, 2006, entered an order transferring the deed to the farmhouse property to ELTM, to be held in escrow. In 2008, defendants requested that plaintiff pursue a motion to release the deed from escrow. Plaintiff allegedly refused and, eventually, on February 16, 2010 (effective March 1, 2010), plaintiff withdrew its representation of defendants. Following this withdrawal, ELTM moved in the YAF case to release the deed from escrow.[8] YAF also filed a motion for summary disposition. Before the hearing on the motion, ELTM and YAF reached a tentative settlement agreement, but the motions still went forward. The trial court granted the motion for summary disposition and granted title to the farmhouse property to YAF, finding that ELTM had no right to the property. The court also denied ELTM's motion to release the deed from escrow. Although plaintiff makes much of the trial court's finding that ELTM had no rights to the property, plaintiff ignores events that transpired *after* the YAF matter was dismissed. On March 18, 2010, YAF and ELTM entered into a post-judgment settlement agreement in which YAF agreed to release the deed to the farmhouse to ELTM in exchange for ELTM waiving its right to file an appeal of the final judgment rendered on March 10, 2010. Thus, at the end of the day, ELTM, in 2010, acquired the farmhouse deed. Although the legal malpractice claim might not have been successful, this chain of events does suggest that ELTM's legal malpractice claim was not totally devoid of arguable legal merit, as an earlier motion to release the deed from escrow may have prompted an earlier settlement of the issue. "[M]erely because this Court concludes that a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position." *Kitchen*, 465 Mich at 663. Moreover, a claim or defense is not frivolous merely because it is based on an erroneous legal analysis. *Jerico Constr, Inc v Quadrants, Inc*, 257 Mich App 22, 36; 666 NW2d 310 (2003). The claim or defense must be "completely groundless or 'devoid of arguable legal merit." *Id*. We conclude that ELTM's counterclaim for legal malpractice was sufficient in arguably legal merit to avoid the imposition of sanctions for the filing of a frivolous claim.

Nor does the record compel the conclusion that ELTM had no reasonable basis to believe that the facts underlying its claim for malpractice were in fact true. For example, it appears undisputed that plaintiff did in fact fail to pursue a motion to release the deed from escrow, and that ELTM did in fact lose an opportunity to sell the property to an interested purchaser. Although again ELTM's claim for legal malpractice was ultimately unsuccessful, the facts underlying the claim were not proven to be demonstrably false, nor was it shown that ELTM was aware of any falsity at the time of filing.

We therefore conclude that the trial court (and we note that it the same trial judge who decided both the YAF litigation and the instant case, and who therefore was intimately familiar with the facts of both) did not clearly err in declining to find ELTM's counterclaim for malpractice frivolous. *Kitchen*, 465 Mich at 661.

---

[8] This motion was signed and filed by individual defendant Gilpin on behalf of defendants.

## B. AFFIRMATIVE DEFENSES

For its next claim of error, plaintiff asserts that the trial court erred when it failed to find that defendants' affirmative defenses were frivolous or filed in violation of MCR 2.114 and MCL 600.2591. We disagree. The trial court, in its statement following the evidentiary hearing, did not specifically address plaintiff's argument regarding defendant's affirmative defenses and general defense. However, the order issued by the trial court denying plaintiff's motion for sanctions stated that it found that the "pleadings filed by Counsels for the Defendants were not frivolous." The trial court was presented with arguments by both plaintiff and defendants regarding these issues, both in the context of plaintiff's motion for sanctions and in the context of the parties' responses to the court's post-hearing proposed findings of fact and conclusions of law. We therefore conclude that these issues were raised before, and, at least implicitly addressed and decided by the trial court in favor of defendants. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

Plaintiff argues that defendants' first affirmative defense, entitled "fraud in the inducement," was frivolous because the alleged fraudulent conduct by plaintiff occurred in 2007 and thus could not have fraudulently induced defendants into entering into the engagement agreement in 2005. However, examining the language of the affirmative defense, it is clear that while defendants may have labeled the defense "fraud in the inducement," they were simply arguing that fraudulent representations made by plaintiff caused them to incur additional and unnecessary legal fees. Specifically, defendants alleged that plaintiff repeatedly assured them that they would not be responsible for his legal fees because someone else would have to pay them after they were successful in the YAF litigation. The analysis of the affirmative defense should be based on the nature of the allegations, not the label placed on them by defendants. This Court is not bound by a party's choice of labels. *Johnston v City of Livonia*, 177 Mich App 200, 208; 441 NW2d 41 (1989). Consequently, when considering the actual nature of the affirmative defense, if proven it would serve to reduce the legal fees defendants owed to plaintiff by demonstrating that certain legal fees were fraudulently or unreasonably incurred. Thus, plaintiff's assertions that defendant did not allege any conduct occurring before the execution of the engagement agreement is not fatal to the affirmative defense actually pleaded. Plaintiff has not established that the trial court clearly erred in failing to find this affirmative defense to be frivolous.

For its second affirmative defense, defendants alleged that plaintiff inflated its legal fees (so as not to be entitled to all of the legal fees requested) because plaintiff failed to carry out the wishes of its clients and, instead, pursued its own agenda. The third affirmative defense, labeled "[t]ortious interference with a business proposition" appears essentially to be a restatement of the allegation of legal malpractice concerning plaintiff's failure to file a motion to remove the deed from escrow. Finally, the fourth affirmative defense, labeled "[w]rongful conversion," appears simply to be a reiteration of the second affirmative defense, although expressed under a different title and using different explanatory language. We have previously addressed the efficacy of the legal malpractice claim above. With respect to the remaining affirmative defenses, plaintiff simply argues that they were frivolous based on the fact that when defendants were called upon to support their pleadings, they came forward with nothing and, indeed, defendants agreed to withdraw the affirmative defense of "conversion."

We conclude that plaintiff has failed to establish that the trial court clearly erred in failing to find that these affirmative defenses were frivolous. The question whether a claim is frivolous is evaluated at the time the claim was raised. *In re Costs & Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002). There is nothing in the record to suggest that, at the time defendants alleged that plaintiff had refused to act on its clients' instructions, defendants did not believe that this assertion would be borne out by the facts. Indeed, defendants continue to assert that plaintiff did not follow defendants' instructions. Moreover, the fact that defendants did not fully support their affirmative defenses, and indeed withdrew the "conversion"-labeled defense, is not dispositive. A decision to withdraw an affirmative defense does not necessarily imply that a defendant never had any reasonable basis for believing that the facts underlying the defense were true. See *Szymanski v Brown*, 221 Mich App 423, 437; 562 NW2d 212 (1997). Defendants may have decided, after discovery had been completed, that they should pursue their strongest defenses, and therefore, that it was more advantageous to withdraw certain defenses. *Id*. Based on the foregoing, we cannot conclude that the trial court's denial of plaintiff's motion for sanctions with respect to defendants' affirmative defenses was clearly erroneous.

## C. GENERAL DEFENSE

Finally, plaintiff contends that a general defense pleaded in defendants' answer to the complaint was not well grounded in fact. Specifically, defendants alleged that certain payments had not been not accurately credited to their account. Plaintiff argues that this allegation was frivolous because, had defendants simply reviewed their own check register and compared it to the invoices, they would have known that all of their payments were in fact properly credited. Again, whether a claim is frivolous is evaluated at the time the claim is raised. *In re Costs & Attorney Fees*, 250 Mich App at 94. At the time of the evidentiary hearing, Conway admitted that because of a corruption in his billing system software, there was a nine-month period where plaintiff did not bill defendants. He further acknowledged that there were charges on defendants' bill for services rendered to other clients. Based on these admissions, we cannot conclude that defendants' allegation of inaccuracies in plaintiff's accounting were frivolous when made. Because defendants advanced defenses sufficiently grounded in law and fact, the trial court did not plainly err when it denied plaintiff's motion for sanctions pursuant to MCR 2.114 and MCL 600.2591.

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Peter D. O'Connell