*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RENE MARIE STURDAVENT,

      Plaintiff-Appellee,

v

WILLIAM SIM SPENCER,

      Defendant-Appellant.

UNPUBLISHED
December 10, 2020

No. 351428
Oakland Circuit Court
LC No. 1994-471049-DM

WILLIAM SIM SPENCER,

      Plaintiff-Appellant,

v

RENE MARIE STURDAVENT,

      Defendant,

and

OAKLAND COUNTY FRIEND OF THE COURT,

      Defendant-Appellee.

No. 351745
Oakland Circuit Court
LC No. 2019-177166-CZ

Before: MURRAY, C.J., and K. F. KELLY and STEPHENS, JJ.

PER CURIAM.

These consolidated appeals both involve enforcement of a large child support arrearage owed by appellant, William Sim Spencer (Spencer), and his defenses to collection efforts made by

-1-

the Oakland County Friend of the Court (the FOC).[1] In Docket No. 351428, Spencer appeals as of right the trial court's order in lower court case number 1994-471049-DM (the divorce case) finding him in contempt for "[f]ailure to exercise due diligence so that [he] could have the capacity to pay all or some portion of the amount due under the support order." In Docket No. 351745, Spencer appeals as of right the trial court's order granting summary disposition in favor of the FOC in lower court case number 2019-177166-CZ (the second lawsuit). Finding no errors warranting reversal, we affirm the trial court's orders in both appeals.

## I. BASIC FACTS AND PROCCEDURAL HISTORY

Spencer and his ex-wife, Rene Marie Sturdavent, divorced in 1994. The consent judgment of divorce ordered Spencer to pay child support for his two children. In 2001, Spencer pleaded guilty to several criminal offenses and was sentenced to 6 to 15 years' imprisonment. At the time of his incarceration, Spencer owed $29,455 in accrued child support.

Most of Spencer's claims of error stem from correspondence he exchanged with the FOC during the final years of his incarceration. In July 2015, Spencer wrote to the FOC to explain that he had been in prison since 2001, planned to apply for disability benefits when he was released, and did not anticipate being able to pay the sizable child support arrearage, which then totaled nearly $90,000. On March 17, 2016, the FOC responded to Spencer's letter, indicating that the FOC reviewed his case and planned to close it. In pertinent part, the FOC's letter said, "Your account will be adjusted to reflect a zero balance and your case will be closed." Three days later, the FOC sent a second letter indicating that the case would be closed in 60 days. However, on or about May 16, 2016, the FOC sent Spencer a third letter to advise him that "the previous arrearages were added back to the case" at Sturdavent's request in light of Spencer's impending release from prison. Spencer completed his prison sentence on August 14, 2016. By the time of Spencer's release, both of his children were adults and, thus, no longer eligible for child support.

In February 2017, the FOC obtained a show-cause order in the divorce case requiring Spencer to appear before the court to explain why he should not be held in contempt for failing to satisfy his child support obligation. Spencer filed a plethora of motions and objected to the FOC's collection efforts, raising a wide range of defenses. Most significantly for purposes of this appeal, Spencer maintained that the FOC's March 17, 2016 correspondence constituted a release of his child support obligation that could not be unilaterally rescinded absent fraud or mutual mistake. Spencer also argued that the trial court lacked jurisdiction to enforce the child support order because his arrearage had been lawfully released by the FOC. In July 2017, the trial court entered an order retroactively abating Spencer's child support beginning May 29, 2007, because Spencer "notified the Friend of the Court of his incarceration at that time but no action was taken by the Friend of the Court to abate support pursuant to statute." Over two years later, the trial court entered an order finding Spencer in contempt for failure to exercise due diligence in paying all or some of his child support arrearage. At the time of the trial court's ruling on September 11, 2019,

---

[1] Spencer's appeals were consolidated by this Court to advance the efficient administration of the appellate process. *Sturdavent v Spencer*, unpublished order of the Court of Appeals, entered July 28, 2020 (Docket Nos. 351428 and 351745).

Spencer owed $75,879.10 in accrued child support. The order also required Spencer to pay $50 by November 13, 2019, or risk being sentenced to a period in jail for contempt.

On October 8, 2019, Spencer initiated a second lawsuit by filing a complaint for declaratory and injunctive relief against Sturdavent and the FOC. After reciting the history of his child support obligation, the FOC's March 2016 "release," and the trial court's alleged refusal to address the merits of his jurisdictional arguments, Spencer asserted that his due-process rights were being violated in the divorce case. He therefore asked the trial court to enjoin further collection activity in the divorce case, declare the release enforceable, and declare that the arrearage never exceeded $29,455, i.e., the amount owed when Spencer was first incarcerated in 2001. In lieu of answering the complaint, the FOC moved for summary disposition under MCR 2.116(C)(7) because Spencer's complaint involved a collateral attack on the trial court's support enforcement order in the divorce case. The trial court agreed and granted the FOC's motion.

## II.  DOCKET NO. 351428

### A.  REVIEW OF CHILD SUPPORT ORDERS UNDER MCL 552.517

Spencer first contends that he was denied due process by the FOC's failure to comply with MCL 552.517 addressing periodic review of support orders. We disagree because Spencer failed to demonstrate entitlement to relief.

An issue is generally preserved for appeal if it was raised in or decided by the trial court. *Glasker-Davis v Auvenshine*, ___ Mich App ___, ____; ___ NW2d ___ (2020) (Docket No. 345238); slip op at 3. This issue is unpreserved because Spencer did not challenge the validity of the support order below on the basis of the FOC's noncompliance with its statutory review duty. This Court is not obligated to review issues raised for the first time on appeal. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). More importantly, we do not address constitutional questions that are unnecessary to resolve a case. *People v Jackson*, 487 Mich 783, 801; 790 NW2d 340 (2010); *Booth Newspapers, Inc v University of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993).

Irrespective of any obligation imposed on FOC by MCL 552.517(1)(f)(*v*)(B), when Spencer challenged the FOC's attempts to collect the outstanding child support arrearage in 2017, a referee acknowledged that the FOC was notified of Spencer's incarceration on May 29, 2007, and "did not suspend child support during [Spencer's] incarceration pursuant to statute." The referee therefore recommended that the trial court suspend Spencer's child support obligation from May 29, 2007, until the youngest child turned 18 years old. On July 5, 2017, the trial court accepted the referee's recommendation and retroactively abated Spencer's support obligation beginning May 29, 2007. Because the retroactive abatement was made effective before the FOC was required by statute to review and petition the court for modification, the trial court already remedied any harm arising from the FOC's noncompliance with any statutory duty in 2007. Thus, we need not address the due process challenge, and Spencer is not entitled to further relief.

### B.  SUBJECT-MATTER JURISDICTION

Next, Spencer argues that the trial court lacked subject-matter jurisdiction because the FOC released the "judgment lien obligation" on March 17, 2016, and could not unilaterally rescind the

release. Spencer contends that no court has addressed the merits of this jurisdictional challenge arising from the FOC's purported release, so neither collateral estoppel nor res judicata bar resolution of this issue. We disagree.

"We review de novo as a question of law whether a trial court has subject-matter jurisdiction over a claim." *Jackson v Dir of Dep't of Corrections*, 329 Mich App 422, 425; 942 NW2d 635 (2019). Whether the legal doctrines of res judicata and collateral estoppel apply are also questions of law reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

Spencer implies that the trial court declined to address the merits of his jurisdictional challenge because the issue had already been decided. Although the record contains a July 2017 order denying Spencer's motion regarding the court's jurisdiction for reasons stated on the record, Spencer has not produced transcripts from the July 2017 hearing or the September 2019 hearing during which the trial court found Spencer in contempt, leaving it unclear whether this particular issue has been previously decided or whether the trial court actually applied res judicata or collateral estoppel as Spencer suggests. As appellant, Spencer was responsible for producing transcripts from the trial court proceedings, even transcripts that are not directly relevant to the issues on appeal. *Thompson v Thompson*, 261 Mich App 353, 359 n 1; 683 NW2d 250 (2004). Although this Court can decline to consider "issues for which the appellant failed to produce the transcript," review is not precluded "if the transcript was not relevant to the issue on appeal or if the issue on appeal is simply one of law." *Kern v Kern-Koskela*, 320 Mich App 212, 229-230; 905 NW2d 453 (2017) (quotation marks and citation omitted). Review is not precluded in this instance because, regardless of whether the doctrines of res judicata or collateral estoppel were or should have been applied, Spencer's jurisdictional argument lacks merit.

"The circuit courts of this state are courts of general jurisdiction, with 'original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.' " *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 334; 901 NW2d 566 (2017), quoting MCL 600.605. Spencer does not identify a constitutional provision, statute, or court rule that grants exclusive jurisdiction to another court or tribunal and, instead, argues that the trial court lacked jurisdiction to enforce the child support order because the FOC purportedly released the outstanding arrearage.

Spencer's position reflects a fundamental misunderstanding of subject-matter jurisdiction, which "refers to a court's power to act and authority to hear and determine a case." *Jackson*, 329 Mich App at 425, quoting *Forest Hills Coop v Ann Arbor*, 305 Mich App 572, 617; 854 NW2d 172 (2014) (quotation marks omitted). Subject-matter jurisdiction does not concern a court's authority to decide "the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending[.]" *Winkler*, 500 Mich at 333-334, quoting *Joy v Two-Bit Corp*, 287 Mich 244, 253-254; 283 NW 45 (1938) (quotation marks omitted). Pursuant to MCL 600.1021, "the family division of circuit court has sole and exclusive jurisdiction over" certain cases, including "[c]ases of divorce and ancillary matters as set forth in" the Friend of the Court Act and the Support and Parenting Time Enforcement Act. MCL 600.1021(1)(a)(*v*) and (*viii*). A court is not divested of subject-matter jurisdiction on the basis of facts germane to the particular

case before it. *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 204; 631 NW2d 733 (2001). Thus, the trial court's jurisdiction could not be divested by the execution of a release.

Furthermore, Spencer's consistent reliance on the FOC's "release" as a defense to enforcement of his child support arrearage is without merit. The consent judgment of divorce provided that Spencer would pay Sturdavent, *through the FOC*, specified sums for the support of their minor children. While the FOC may have been responsible for processing Spencer's payments, the debt arising from Spencer's child support obligation was clearly owed to Sturdavent. The Friend of the Court Act recognizes this distinction by providing that "closure of a friend of the court case does not release a party from the party's obligations imposed in the underlying domestic relations matter." MCL 552.505a(5). The FOC simply did not have authority to release Spencer from his obligation to pay the child support owed to Sturdavent.

We also reject Spencer's contention that MCL 552.519(3)(a)(*vi*) vests the FOC with authority to issue the release in this case. MCL 552.519(3)(a) directs the FOC bureau to "[d]evelop and recommend guidelines for conduct, operations, and procedures" for the FOC and its employees, including an adjustment formula for overdue support. MCL 552.519(3)(a)(*vi*). This provision does not authorize the FOC to release a payer from liability for arrearages—it authorizes creation of guidelines for payment of arrearages. See 2017 MCSF 4.02(B) (describing method for calculating increased payments to cover arrearages). Moreover, MCL 552.517e directs the FOC to utilize those guidelines to "administratively adjust arrearage *payment schedules*." (Emphasis added.) The FOC's "administrative adjustment" power clearly concerns adjusting the amount and timing of payments for child support arrearages. The FOC cannot "adjust" the balance owed to the support recipient.

## C. RESERVATION OF RIGHTS

Next, Spencer asserts that all of his payments to the FOC have contained an express reservation of his right to enforce the March 17, 2016 release, as allowed by MCL 440.1308. We disagree because he fails to establish that the statute governs child support arrearages.

This issue is not preserved for review because it was not raised before or decided by the trial court. *Glasker-Davis*, ___ Mich App at ___; slip op at 3. Irrespective of preservation requirements, Spencer failed to demonstrate entitlement to relief.

MCL 440.1308 is part of the general provisions in Michigan's codification of the Uniform Commercial Code (UCC), MCL 440.1101 *et seq*. Spencer's reliance on MCL 440.1308(1) is misplaced in this case because the UCC's general provisions apply only to transactions governed by "another article of this act." MCL 440.1102. The various articles of the UCC apply to transactions in goods, MCL 440.2101 through MCL 440.2725; leases, MCL 440.2801 through MCL 440.2982; negotiable instruments, MCL 440.3101 through MCL 440.3605; certain banking transactions, MCL 440.4101 through MCL 440.4957; letters of credit, MCL 440.5101 through MCL 440.5118; warehouse receipts, bills of lading, and other documents of title, MCL 440.7101 through MCL 440.7702; investment securities, MCL 440.8101 through MCL 440.8601; and secured transactions, MCL 440.9101 through MCL 440.9994. Spencer's child support obligation is not a commercial transaction to which MCL 440.1308(1) could apply.

## III. DOCKET NO. 351745

Spencer raises several claims of error in connection with the trial court's grant of summary disposition in the second lawsuit. In doing so, however, he fails to address the actual basis for the trial court's ruling, i.e., that Spencer's complaint constituted an improper collateral attack on the trial court's decision in the divorce case. "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015). At any rate, we conclude that the trial court did not err by granting summary disposition under MCR 2.116(C)(7).

A trial court's ruling regarding a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). MCR 2.116(C)(7) permits summary disposition on the basis of a prior judgment. *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015). "When it grants a motion under MCR 2.116(C)(7), a trial court should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted). "If there is no factual dispute, the determination whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law." *Allen Park Retirees Ass'n, Inc v Allen Park*, 329 Mich App 430, 444; 942 NW2d 618 (2019). Questions of law, including the application of legal doctrines, are reviewed de novo. *Estes*, 481 Mich at 578-579.

"A collateral attack occurs when a party uses a second proceeding to attack a tribunal's decision in a previous proceeding." *In re Application of Indiana Mich Power Co*, 329 Mich App 397, 406; 942 NW2d 639 (2019) (quotation marks and citation omitted). When a decision is rendered by a court of competent jurisdiction, it may not be collaterally attacked. *Id*. ("Only decisions that are void for lack of subject matter or personal jurisdiction may be collaterally attacked."). "[A] party aggrieved by a decision in an earlier proceeding instead has resort to the appellate process in the context of that same proceeding." *Id*.

Spencer's complaint began by describing the history of his child support obligation, his communications with the FOC while incarcerated, and the proceedings that took place in the divorce action after his release from prison. Spencer alleged that a valid case or controversy existed because the FOC's unilateral rescission of its release violated his rights under the Due Process Clause and because he was in clear danger of being arrested for contempt unless he waived his rights under the release. Under the heading "CLAIMS FOR RELIEF," Spencer asked the trial court to grant an injunction against the FOC's collection efforts, declare the release enforceable, and declare that the arrearage never exceed the preincarceration balance of $29,455. It is evident from the nature of Spencer's claims for relief that his purpose in pursuing the second case was to circumvent the decisions reached in the divorce case. Specifically, Spencer sought to contest the divorce court's denial of Spencer's jurisdictional challenges, the various support enforcement orders, and the divorce court's order finding him in contempt for failure to exercise due diligence in paying the accrued child support arrearage. The trial court did not err by granting summary disposition because a party may not use a second proceeding to attack a decision reached in a previous proceeding. *Id*.

-6-

To the extent that Spencer opines the FOC and trial court misconstrued the nature of his claim, summary disposition remained appropriate. Spencer suggests that the FOC and trial court did not appreciate the significance of the FOC's March 20, 2016 letter regarding the impending case closure, which was, in Spencer's view, an admission by the FOC that Spencer's support obligation had been released. But the implications of the FOC's correspondence had no bearing on the trial court's ruling. The FOC moved for summary disposition under MCR 2.116(C)(7), reasoning that dismissal was required because Spencer's complaint constituted an improper collateral attack on the support enforcement order entered in the divorce case. The trial court agreed and, therefore, granted summary disposition in favor of the FOC. The trial court did not err in this regard. If Spencer was dissatisfied with the trial court's decisions in the divorce case, his only avenue for relief was through the appellate process in that case. *In re Application of Indiana Mich Power Co*, 329 Mich App at 406. Because the trial court's orders in the divorce case were not void for lack of jurisdiction, they could not be collaterally attacked in a second proceeding. *Id*.

We decline to address the balance of Spencer's arguments in Docket No. 351745 because the trial court correctly determined that Spencer's complaint was barred by the collateral-attack doctrine. Spencer's other arguments regarding the substantive merits of his complaint are therefore moot. *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016) ("A matter is moot if this Court's ruling cannot for any reason have a practical effect on the existing controversy.") (quotation marks and citation omitted). "This Court does not decide moot issues." *Id*.

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ Cynthia Diane Stephens

-7-