Kelly, J.
In this case of first impression, we are asked whether the Uniform Fraudulent Transfer Act (UFTA)[1] applies to a transfer of property made pursuant to a property settlement agreement incorporated in a divorce judgment. We hold that it does apply and that a UFTA claim is not an impermissible collateral attack on a divorce judgment. However, property owned as tenants by the entirety is not subject to process by a creditor holding a claim against only one spouse. Such property is not an “asset” under the UFTA. Therefore, its distribution in a divorce judgment does not constitute a “transfer” for purposes of that act.
Because the trial court refused to apply the UFTA in this case, it never addressed whether plaintiff stated a valid cause of action against Julie Swabash under the act. Thus, the question whether plaintiff raised issues *577 of material fact concerning Jeff Titus’s actual intent to defraud her was not properly before the Court of Appeals. Hence, we vacate the portion of the Court of Appeals judgment that discusses the factual sufficiency of plaintiffs claim of a transfer made with an actual intent to defraud. We affirm in part and vacate in part the judgment of the Court of Appeals.
I. FACTS AND PROCEDURAL HISTORY
The relevant facts of this case are as follows. On September 23, 2002, plaintiff Jan Estes filed a wrongfiil death action against defendant Jeff Titus, the incarcerated murderer of plaintiffs husband.[2] Not long after, Titus’s wife, now known as Julie Swabash, filed for divorce. A divorce judgment entered on March 23, 2003, providing Swabash with nearly all the marital assets pursuant to the parties’ property settlement agreement.[3] The judgment explained that the property distribution was unequal because Titus was serving a life sentence in prison and was relieved of any child support obligation for the couple’s 17-year-old daughter.
On March 24, 2003, plaintiff sought to intervene in the divorce action. She challenged the distribution of assets to which Titus was entitled, in anticipation of obtaining a recovery from him in her wrongful death action. The divorce court denied the motion, and plaintiff did not appeal the denial. Instead, on January 20, 2005, after obtaining a wrongful death award, she *578 moved under MCL 600.6128 to join Swabash in the wrongful death action in an effort to collect the judgment.
Plaintiff contended that the Tituses’ property settlement had been a fraudulent transfer within the meaning of the UFTA. The trial court held that it lacked the authority to amend the judgment entered by the divorce court. It declined to add Swabash as a party, dissolved the restraining order, and quashed the discovery subpoena it had issued earlier. Plaintiff appealed.
Judge MAMEY, writing for the majority in the Court of Appeals, joined by Judge WHITE, held that the UFTA applied to property transfers in divorce cases. The Court of Appeals majority went further, holding that plaintiff had sufficiently established a claim under the UFTA by demonstrating an actual intent to defraud.[4] The Court remanded the matter to the trial court so that Swabash could be added as a party defendant to the supplemental proceedings in the wrongful death case.[5] Judge O’CONNELL dissented in part in the belief that the Court of Appeals majority was allowing a collateral attack on the divorce judgment. We granted leave to appeal.[6]
II. STANDARD OF REVIEW
This appeal presents jurisdictional issues, which we review de novo.[7] The interpretation of statutes and court rules is also a question of law subject to de novo *579 review,[8] as is the application of legal doctrines, such as res judicata and collateral estoppel.[9]
III. THE UFTA’S APPLICATION TO PROPERTY SETTLEMENTS IN DIVORCE CASES
In her appeal, Swabash argues that the Legislature did not intend to include property distributions in divorce cases within the purview of the UFTA. We note initially that the language of the act does not exempt from its reach property transferred pursuant to divorce judgments. However, the definition of “asset” in the UFTA does exempt some properly held as tenants by the entirety.[10] Hence, in a UFTA action, marital property held by the entirety is exempt from the creditor of only one spouse when the property is transferred pursuant to a divorce judgment. But property transferred pursuant to a property settlement agreement incorporated in a divorce judgment is subject to a UFTA action if it meets the definition of an asset.
A. TRANSFER
We reject Swabash’s claim that the UFTA can never reach the transfer of properly in divorce actions. The UFTA defines “transfer” at MCL 556.31(7) as “eveiy mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, and creation of a hen or other encumbrance.”
A court may provide for the distribution of property in a divorce judgment, and, when it enters, the judg *580 ment has the same effect as a deed or a bill of sale.[11] A property settlement agreement incorporated in a divorce judgment disposes of the parties’ interests in the marital property. As part of the judgment, it effectuates a transfer for purposes of the UFTA when the divorce judgment enters.
We conclude that plaintiff may challenge the Tituses’ property settlement agreement incorporated in the divorce judgment as a transfer within the purview of the UFTA.
B. PROPERTY HELD AS TENANTS BY THE ENTIRETY
Swabash’s argument that the Legislature did not intend that the UFTA reach property transferred in a divorce action pursuant to a property settlement agreement is correct only with respect to some property held as tenants by the entirety. Only spouses can hold property in that fashion.[12]
A UFTA action will not reach such property unless both spouses are debtors on the claim that is the subject of the action. This is because a “transfer” under the *581 UFTA includes “disposing of or parting with an asset or an interest in an asset.”[13] “Asset” is defined in the act as including the “property of the debtor.”[14] One important exception is “[a]n interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only 1 tenant.”[15] Property held as tenants by the entirety is exempt from the claims of the creditors of only one spouse and is not an asset. Hence, a distribution of such property in a divorce judgment is not a transfer for purposes of the UFTA.
“A judgment lien does not attach to an interest in real property owned as tenants by the entirety unless the underlying judgment is entered against both the husband and wife.”[16] The Legislature extended that same protection to “ [a]ll bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidences of indebtedness” held by a husband and wife.[17] Thus, “[property described in section 1 of 1927 PA 212, MCL 557.151, or real property, held jointly by a husband and wife as a tenancy by the entirety is exempt from execution under a judgment entered against only 1 spouse.”[18]
Therefore, real estate and the financial instruments described in MCL 557.151 held as tenants by the entirety cannot be the subject matter of a UFTA claim if only one spouse is the debtor. This conclusion fits into the larger statutory purpose of avoiding fraudulent *582 transfers because it is difficult to comprehend how disposing of property that a creditor cannot reach could “defraud” that creditor.
This rule applies when property held as tenants by the entirety is disposed of in a divorce judgment, despite the fact that the divorce ends the tenancy by the entirety.[19] This is because the spouses hold the property as tenants by the entirety until the marriage is dissolved. Under the UFTA, such property is not an asset, and its distribution pursuant to the divorce judgment is not a transfer.
IV UFTA RELIEF AND COLLATERAL ATTACKS ON DIVORCE JUDGMENTS
The dissenting judge in the Court of Appeals opined that plaintiff was precluded from using this case to collaterally attack the Tituses’ divorce judgment. According to the dissent, plaintiffs proper remedy was to appeal the divorce court’s denial of her motion to intervene in the divorce proceedings.[20] The dissent’s position is faulty because it presumes that the divorce court had the authority to determine a creditor’s property rights within a divorce proceeding. If that had been the case, plaintiff would have been required to appeal the divorce court’s denial of her motion to intervene.
A. THE EFFECT OF PLAINTIFF’S FAILURE TO APPEAL THE ORDER DENYING HER MOTION TO INTERVENE
This Court has long recognized that the jurisdiction of a divorce court is strictly statutory and limited to *583 determining “the rights and obligations between the husband and wife, to the exclusion of third parties ... .”[21] When fraud is alleged, third parties can be joined in the divorce action only if they have conspired with one spouse to defraud the other spouse of a property interest.[22]
In this case, plaintiff does not allege that one of the Tituses defrauded the other. She alleges instead that the property distribution was fraudulent only with respect to her, a third party to the divorce.
Plaintiffs motion to intervene was based on MCR 2.209(A)(3), which allows an intervention of right in cases in which the intervenor’s interests are not adequately represented by the parties.[23] The court rule would otherwise have applied in the divorce because neither of the Tituses adequately represented plaintiffs interest as a potential creditor. However, the rule did not apply because the creditor sought to intervene in a divorce action in which the court did not have statutory jurisdiction to decide the intervenor’s rights. Court *584 rules cannot establish, abrogate, or modify the substantive law.[24]
In Yedinak v Yedinak, we addressed this same issue in the context of the court rules of permissive and necessary joinder. The majority in Yedinak found that nothing in these rules gave the divorce courts “power to disregard statutory provisions pertaining to divorce and to litigate the rights of others than the husband and wife.”[25] The same reasoning applies here. The divorce court properly denied plaintiffs motion to intervene in the divorce proceedings, and plaintiff correctly concluded that an appeal from the denial order would have been futile.
When it denied plaintiffs motion to intervene, the divorce court opined that the Tituses’ property settlement was not fraudulent because it achieved an equitable division between the spouses. The judge opined:
The problem with the Intervenor/Petitioner’s position is that it presumes fraud due to what may appear to be an uneven or inequitable distribution of marital assets to the Divorce/Plaintiff. If the husband were not incarcerated, and/or not incarcerated for a significant period of time, then the argument of fraud may have more weight. However, in the present case, it is very likely that had the divorce case gone to trial, that this Court would have granted most of the property to Ms. Titus simply based on the fact that her husband will be incarcerated for a significant period of time.
Swabash argues that plaintiffs failure to appeal the denial of plaintiffs motion caused the divorce court’s decision that no fraud existed to have the preclusive *585 effect of either res judicata or collateral estoppel. But these doctrines are inapplicable here. The creditor’s right to relief under the UFTA was not raised in plaintiffs motion to intervene in the divorce proceeding, nor could it have been granted if raised.
The doctrine of res judicata bars a subsequent action when “(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies.”[26] The doctrine bars all matters that with due diligence should have been raised in the earlier action.[27] Plaintiff did not raise her claim for UFTA relief in her motion to intervene, nor was she required to do so, given that the divorce court lacked the authority to consider it.
Collateral estoppel is also inapplicable. That doctrine requires that (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel.[28] The essential issue in the motion to intervene was whether a third party could be allowed to claim that fraud was perpetrated against her in the divorce proceeding.
Once the divorce court decided that it had no jurisdiction to grant the motion to intervene, it could not reach the merits of plaintiffs claim. Thus, plaintiff had no opportunity to litigate the issue of fraud. Because no hearing was held on this issue, it cannot be said that the issue was fully and fairly litigated. Moreover, the issue whether relief under the UFTA was available, the only *586 issue relevant to this appeal, was not even raised in the motion to intervene. Consequently, the divorce court did not resolve the issue whether the Tituses’ property distribution was inequitable with respect to plaintiff under the UFTA.
In summary, we hold that plaintiffs failure to appeal the order denying her motion to intervene in the Tituses’ divorce had no preclusive effect on her claim for relief under the UFTA.
B. THE LIMITED NATURE OF UFTA RELIEF
The Court of Appeals correctly concluded that MCR 2.613(B) prevented the trial court in the wrongful death case from setting aside or voiding the divorce judgment entered by the family division of the circuit court.[29] It accurately noted, as well, that MCR 2.613(B) does not prevent a court such as the court in the wrongful death case from granting relief under the UFTA.[30] The dissenting judge concluded that the Court of Appeals in effect allowed plaintiff to “recover any ‘marital assets’ by way of a collateral attack on a valid divorce judgment.”[31]
The UFTA specifically provides for avoiding a fraudulent transfer or attaching a particular fraudu *587 lently transferred asset.[32] Relief under the UFTA determines only the creditor’s right to fraudulently transferred property.[33] The court in a UFTA action would transfer directly to the creditor any property interest that would have been awarded to the debtor in the divorce action but for the parties’ fraud. Hence, the relief granted would not affect the validity of the divorce judgment or provisions of the judgment such as child custody.
C. UFTA RELIEF DISTINGUISHED FROM A COLLATERAL ATTACK ON THE VALIDITY OF THE DIVORCE JUDGMENT
Relief under the UFTA should be distinguished from *588 a collateral attack on the validity of the divorce judgment itself. Challenges to the validity of a divorce typically are premised on alleged violations of the various statutory requirements for divorce, such as the residency requirement and the waiting period.[34] These are jurisdictional requirements.[35] Judgments may be attacked both directly and collaterally for lack of jurisdiction. However, this Court has been loath to invalidate divorce judgments on the urgings of third parties when neither spouse challenged the validity of the divorce in a direct appeal.[36] Furthermore, the Court has refused to invalidate divorces on the basis of third-party allegations of nonjurisdictional irregularities in the divorce proceedings.[37]
This line of cases is distinguishable from the instant case because relief under the UFTA does not invalidate the divorce judgment itself. Furthermore, an independent action for relief under the UFTA is not premised on any irregularity in the divorce proceedings. It is premised on the divorce court’s lack of statutory au *589 thority to conduct a UFTA analysis within the divorce proceeding.
D. UFTA RELIEF DISTINGUISHED FROM A COLLATERAL ATTACK ON A LIFE INSURANCE PROVISION IN THE DIVORCE JUDGMENT
The decision on which the Court of Appeals dissent relied when stating that divorce judgments are not generally subject to third-party collateral attacks[38] derived from a different line of cases. Those cases dealt specifically with life insurance provisions in divorce judgments.
Prominent among them is Kasper v Metro Life Ins Co.[39] Kasper involved a dispute over life insurance proceeds between the decedent’s father and the decedent’s ex-wife as guardian of the couple’s son. The ex-wife contended that, under the divorce judgment, the couple’s son was to be the designated beneficiary of the decedent’s life insurance policy. After the divorce judgment was entered, the decedent had named the decedent’s father as the policy’s beneficiary. The father argued that the divorce court had no jurisdiction to adjudicate the rights of the couple’s son, a third party, within the divorce proceeding. We held that, although the divorce court could not make a third party the beneficiary of a life insurance policy, it could ratify the parties’ agreement to that effect.[40] Thus, it was not the divorce court but the parties to the divorce who decided their son’s right to receive life insurance proceeds under the policy.
In denying the right of the decedent’s father to claim the proceeds as a later-designated beneficiary in *590 Kasper, we noted that the court’s authority to enforce the spouses’ agreement was “predicated upon our settled rule that one who has partaken of the fruits of a divorce decree cannot be heard to question the jurisdiction of the court which rendered it.”[41] We also quoted the following passage from the Court of Appeals decision in Krueger v Krueger, which dealt with the life insurance provision in a divorce judgment:
It is also important to note that the person challenging the divorce judgment and the underlying agreement was not a party to it. Under the circumstances it would be improper to allow this divorce settlement to be collaterally attacked after the husband has accepted all the benefits which he could obtain under it, but relieving him of his obligation.[42]
The proposition that a third party cannot collaterally attack a divorce judgment also occurred in earlier Court of Appeals cases dealing with life insurance provisions in divorce judgments. One of these, White v Michigan Life Ins Co, is the case cited in the Court of Appeals dissent.[43] Viewed in context, the prohibition against *591 third-party attacks on life insurance provisions in divorce judgments is based on the premise that they are an improper means of challenging the provisions’ validity. The spouse who was ordered, or who promised, to designate a certain beneficiary was a party to the divorce proceedings. That spouse could have challenged the validity of the judgment’s life insurance provision on direct appeal. A third-party collateral attack on the provision would be inappropriate for that reason.
This line of cases should be distinguished from cases involving a creditor’s right to relief under the UFTA. A creditor is not a party to a divorce proceeding and cannot directly appeal a divorce judgment. A creditor’s right to relief under the UFTA is not affected by the fact that the debtor can appeal the property distribution in the divorce judgment. If a debtor agrees to a transfer of substantially all the marital assets in order to defraud a creditor, he or she cannot be expected to appeal that transfer. Neither can a creditor appeal in such a case. Given that a creditor is precluded from intervening in a divorce proceeding, the only way in which the creditor can raise a UFTA claim is in a separate action.[44] A *592 creditor’s request for relief under the UFTA in a separate proceeding is not an impermissible collateral attack on the divorce judgment.
The Court of Appeals correctly concluded that Swabash should be joined in the wrongful death action. She is both a “person claiming adversely to the judgment debtor” in that action under MCL 600.6128(2) and a necessary party to plaintiffs claim for UFTA relief under MCR 2.205(A).[45]
V CONCLUSION
We hold that the UFTA applies to the transfer of property in a divorce judgment that incorporates a property settlement agreement. Property that is held as tenants by the entirety is not subject to process by a creditor holding a claim against only one spouse. Such property is not an “asset” under the UFTA. Therefore, the distribution of such property in a divorce judgment is not a “transfer” for purposes of the UFTA.
Because the validity of the UFTA claim in this case was not properly before the Court of Appeals, we vacate that portion of the Court’s judgment discussing the badges of fraud listed in MCL 566.34(2).
The trial court should have granted plaintiffs motion to join Swabash in the supplemental proceedings to the wrongful death action. Swabash is a person claiming adversely to the judgment debtor, Titus, under MCL *593 600.6128(2) and a necessary party to plaintiffs claim for UFTA relief under MCR 2.205(A).
Plaintiffs claim for relief under the UFTA brought in the wrongful death action does not constitute a collateral attack on the divorce judgment. The relief plaintiff sought in the wrongful death action could not vacate the divorce judgment. It could only affect plaintiffs right to property fraudulently transferred to Swabash pursuant to the judgment. It could allow avoidance of a fraudulent transfer or attachment of a fraudulently transferred asset.
We also hold that the divorce court properly denied plaintiffs motion to intervene in the Tituses’ divorce action. An appeal of that denial would have been futile. Plaintiff was a third party to the action. A third party can be joined in a divorce action when fraud is alleged only if he or she has conspired -with one spouse to defraud the other of a property interest. That did not occur here. The divorce court’s determination was of the equities between the spouses. The court did not consider whether the transfer of assets envisioned in the property settlement agreement constituted a fraudulent transfer with respect to creditors.
We affirm the judgment of the Court of Appeals in part, vacate it in part, and remand the case to the trial court for further proceedings in conformity with this opinion.
Taylor, C.J, and Cavanagh, Weaver, Corrigan, YOUNG, and MARKMAN, JJ., concurred with KELLY, J.

 MCL 566.31 et seq.

 Titus shot plaintiffs husband and another hunter during deer hunting season in 1990. The case was not solved until a decade later, and Titus was convicted of premeditated murder and sentenced to a nonparolable term of life in prison in 2002.

 The terms of the parties’ property settlement agreement were included in the divorce judgment, but the agreement explicitly was not merged in the judgment.

 See MCL 566.34(2).

 Estes v Titus, 273 Mich App 356; 731 NW2d 119 (2006).

 Estes v Titus, 478 Mich 864 (2007).

 Lapeer Co Clerk v Lapeer Circuit Judges, 465 Mich 559, 566; 640 NW2d 567 (2002).

 Cardinal Mooney High School v Michigan High School Athletic Ass’n, 437 Mich 75, 80; 467 NW2d 21 (1991).

 Ghaffari v Turner Constr Co, 473 Mich 16, 19; 699 NW2d 687 (2005).

 MCL 566.31(b)(¿¿¿).

 MCL 552.401 provides:
The circuit court of this state may include in any decree of divorce or of separate maintenance entered in the circuit court appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to he equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property. The decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party’s spouse to the party.

 “Husband and wife are the only persons who can be tenants by the entireties.” Field v Steiner, 250 Mich 469, 477; 231 NW 109 (1930).

 MCL 566.31(1).

 MCL 566.31(b).

 MCL 566.31(b)(zz¿).

 MCL 600.2807(1).

 MCL 557.151.

 MCL 600.6023a.

 MCL 552.102 provides: “Every husband and wife owning real estate as joint tenants or as tenants by entireties shall, upon being divorced, become tenants in common of such real estate, unless the ownership thereof is otherwise determined by the decree of divorce.”

 Estes, 273 Mich App at 386-387 (O’CONNELL, EJ., dissenting).

 Yedinak v Yedinak, 383 Mich 409, 413; 175 NW2d 706 (1970). In Yedinak, the divorce court allowed the defendant husband’s brothers to be joined as parties in the divorce. It placed an equitable lien on the property to secure the payment of money the husband was alleged to have orally promised to his brothers. A majority of this Court reversed, reasoning that the creditor brothers had an adequate remedy at law to secure a judgment against their debtor brother. Id. at 414-415. The divorce court could not exercise its equitable powers in contravention of its limited statutory authority. Id. at 415.

 Berg v Berg, 336 Mich 284, 288; 57 NW2d 889 (1953).

 MCR 2.209(A)(3) states that a person has the right to intervene
when the applicant claims an interest relating to the properly or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.

 Shannon v Ottawa Circuit Judge, 245 Mich 220, 222-223; 222 NW 168 (1928).

 Yedinak, 383 Mich at 414.

 Dart v Dart, 460 Mich 573, 586; 597 NW2d 82 (1999).

 Id.

 Storey v Meijer, Inc, 431 Mich 368, 373 n 3; 429 NW2d 169 (1988).

 MCR 2.613(B) states:
A judgment or order may be set aside or vacated, and a proceeding under a judgment or order may be stayed, only by the judge who entered the judgment or order, unless that judge is absent or unable to act. If the judge who entered the judgment or order is absent or unable to act, an order vacating or setting aside the judgment or order or staying proceedings under the judgment or order may be entered by a judge otherwise empowered to rule in the matter.

 Estes, 273 Mich App at 367-369.

 Id. at 386 (O’Connell, EJ., dissenting).

 MCL 566.37 provides:
(1) In an action for relief against a transfer or obligation under this act, a creditor, subject to the limitations in [MCL 566.38], may obtain 1 or more of the following:
(a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor’s claim.
(b) An attachment against the asset transferred or other property of the transferee to the extent authorized under section 4001 of the revised judicature act of 1961, 1961 PA 236, MCL 600.4001, and applicable court rules.
(c) Subject to applicable principles of equity and in accordance with applicable court rules and statutes, 1 or more of the following:
(1) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property.
(ii) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee.
(Hi) Any other relief the court determines appropriate.
(2) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

 See Ocwen Fed Bank, FSB v Int’l Christian Music Ministry, 472 Mich 923 (2005).

 In Couyoumjian v Anspach, 360 Mich 371, 374-375, 386; 103 NW2d 587 (1960), the plaintiffs alleged that the defendant attorney had misrepresented his client’s residence in a divorce proceeding. In that proceeding, the court awarded the client property that the client’s husband had earlier conveyed to plaintiffs. In Jackson City Bank & Trust Co v Fredrick, 271 Mich 538; 260 NW 908 (1935), the estate of the defendant’s second husband attempted to set aside real property conveyances by the second husband to the defendant and himself as tenants by the entirety. The plaintiff claimed that the defendant’s divorce from her first husband was invalid because the court entered the divorce judgment before the applicable waiting period had expired.

 Stamadianos v Stamadianos, 425 Mich 1, 6-7; 385 NW2d 604 (1986).

 Jackson City Bank, 271 Mich at 544, 548.

 In Pettiford v Zoellner, 45 Mich 358, 361; 8 NW 57 (1881), the decedent’s child by a prior marriage sought to eject the decedent’s widow from the couple’s residence. The Court refused to invalidate the couple’s divorces from their former spouses on the basis of allegations of irregularities in the affidavits supporting service by publication.

 White v Michigan Life Ins Co, 43 Mich App 653; 204 NW2d 772 (1972).

 Kasper v Metro Life Ins Co, 412 Mich 232; 313 NW2d 904 (1981).

 Id. at 254-255.

 Id. at 255.

 Krueger v Krueger, 88 Mich App 722, 725-726; 278 NW2d 514 (1979).

 White was decided under an earlier version of MCL 552.101, which at the time provided that an insurance policy was payable to the decedent’s estate “unless otherwise ordered” in the divorce judgment. The Court of Appeals interpreted this provision as giving authority to the divorce court to order the husband to name the couple’s children as the principal beneficiaries of his insurance policy. The husband did not do so. At his death, his second wife was the sole beneficiary of his life insurance policies. The Court of Appeals stated the general proposition that a “divorce judgment may not be collaterally attacked.” White, 43 Mich App at 657. It then interpreted the divorce judgment to conclude that the second wife was entitled to insurance proceeds only to the extent that the decedent had purchased additional insurance after the divorce. Id. at 658.
An earlier case decided under the same version of the statute also relied on the proposition that “the validity of an unappealed decree of *591 divorce may not be attacked by third parties except for lack of jurisdiction.” Binben v Continental Cas Co, 9 Mich App 97, 100-101; 155 NW2d 883 (1967). The Court concluded that the decedent’s second wife was not entitled to life insurance proceeds under the clear language of the divorce judgment. The judgment had ordered the decedent to name his minor children as his beneficiaries.

 We note that courts in other states have allowed UFTA relief under a fraud exception to the prohibition against collateral attacks on judgments. In Greeninger v Cromwell, 140 Or App 241, 246; 915 P2d 479 (1996), the court reasoned that a fraudulent transfer under the UFTA constitutes extrinsic fraud because it is collateral to the merits of the case. The court held that an attack on such a transfer fell under the extrinsic fraud exception to collateral attacks on judgments. In Dowell v Dennis, 998 P2d 206, 212 (Okla Civ App, 1999), the court relied on select sections of Corpus Juris Secundum to hold that a third party whose *592 interests have accrued beforehand may attack a divorce judgment on the ground of fraud “regardless of whether such attack is labeled ‘collateral’ or ‘direct.’ ” We take no position on the validity of this alternative approach. Rather, we conclude that a creditor’s claim under the UFTA is not an impermissible collateral attack on a divorce judgment because (1) the divorce court has no jurisdiction to determine the rights of a creditor and (2) a creditor cannot appeal a divorce judgment.

 Estes, 273 Mich App at 383-386.