*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FRANCIS H. ZALEWSKI,

Plaintiff-Appellee,

v

CASIMIR J. ZALEWSKI,

Defendant-Appellee,

and

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

Appellant.

FOR PUBLICATION
July 28, 2022
9:00 a.m.

No. 357047
Macomb Circuit Court
Family Division
LC No. 2020-009677-DO

Before: JANSEN, P.J., and O'BRIEN and HOOD, JJ.

PER CURIAM.

Department of Health and Human Services (DHHS) appeals as of right an order for spousal support directing transfer of essentially all of defendant's assets and income to plaintiff. DHHS contends that plaintiff's sole purpose for initiating this action for separate maintenance was to impoverish defendant so that he would qualify for Medicaid benefits, while simultaneously preserving the marital estate for her use. DHHS argues that the trial court could not properly enter a domestic-relations order where the parties did not truly intend to end their marriage, plaintiff failed to comply with statutory and court rule requirements regarding actions for separate maintenance, and there was no evidence warranting entry of the support order. We decline to address these issues because DHHS did not take the appropriate procedural steps to present them for review. The only issue properly before this Court is whether the trial court abused its discretion by denying DHHS's motion for reconsideration of the support order. Because we find no abuse of discretion, we affirm.

Plaintiff filed a complaint for separate maintenance stating that she and defendant lived together as husband and wife for several decades until defendant suffered a stroke that required

-1-

his placement in a nursing home. Plaintiff further alleged that if she ever became disabled "her income and assets will be insufficient to support herself if the Defendant's income and assets would be used to pay for his care in the nursing home or long term care facility." But "[o]nce on Medicaid, 100% of Defendant's care needs will be met by his Medicaid benefits." Plaintiff asked the court to order defendant to pay spousal support "in the amount of [the] total marital estate" and assign his social security income to plaintiff. The parties stipulated to entry of a support order and, after a perfunctory hearing on the matter, the trial court entered the parties' proposed order.[1]

Designating itself as an "interested party," DHHS moved for reconsideration of the support order. DHHS argued that the parties were attempting to evade Medicaid policy regarding eligibility for, and the extent of, long-term care benefits—which were available only to those with minimal financial resources—and that this Court had previously disapproved of similar schemes undertaken in probate proceedings. DHHS further argued that the support order did not comport with certain statutes and court rules governing separate maintenance actions or caselaw requiring equitable distribution of marital assets. Plaintiff and defendant both opposed DHHS's motion arguing, in part, that DHHS could not participate in the domestic-relations action. The trial court agreed that third-party intervention in domestic-relations matters was only permitted in limited circumstances that did not apply to DHHS, and denied DHHS's motion for reconsideration.

As an initial matter, we must first address plaintiff's arguments regarding the proper scope of this appeal. Plaintiff maintains that the only issue properly before this Court is whether the trial court abused its discretion by denying DHHS's motion for reconsideration. We agree.

This Court reviews decisions regarding motions for reconsideration for an abuse of discretion, which occurs when the trial court "chooses an outcome outside the range of principled outcomes." *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "Whether a party has standing is a question of law that is reviewed de novo." *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019).

Michigan common law does not include authority to grant a judgment of divorce. *Stamadianos v Stamadianos*, 425 Mich 1, 5; 385 NW2d 604 (1986). Instead, "[t]he jurisdiction of the circuit courts in matters of divorce is strictly statutory." *Id*. MCL 552.6(1) states, "A complaint for divorce may be filed in the circuit court upon the allegation that there has been a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved." MCL 552.7(1) similarly grants jurisdiction to the circuit court in actions for separate maintenance, which "may be filed in the circuit court in the same manner and on the same grounds as an action for divorce."

In *Estes v Titus*, 481 Mich 573, 577; 751 NW2d 493 (2008), Julie Swabash divorced Jeff Titus after he was incarcerated for murder. Pursuant to a property settlement agreement, Swabash received nearly all of the marital assets. *Id*. The victim's widow, Jan Estes, unsuccessfully tried to intervene in the divorce action to challenge the distribution of assets and did not appeal denial of her motion to intervene. *Id*. After she obtained a judgment against Titus in a separate wrongful-

---

[1] Defendant's attorney-in-fact approved the proposed order on defendant's behalf.

death action, Estes moved to join Swabash in that case on the basis that the property settlement was a fraudulent transfer of Titus's assets. *Id*. at 577-578. The trial court did not permit the joinder, reasoning that it lacked authority to amend Swabash and Titus's divorce judgment. *Id*. at 578.

On appeal, the Michigan Supreme Court concluded that Estes's failure to appeal the divorce court's denial of her motion to intervene did not have a preclusive effect on the issue of whether fraud occurred because the divorce court did not have jurisdiction over that issue and could not have decided it on the merits. *Id*. at 583-586. The Court explained that "the jurisdiction of a divorce court is strictly statutory and limited to determining 'the rights and obligations between the husband and wife, to the exclusion of third parties . . . .' " *Id*. at 582-583, quoting *Yedinak v Yedinak*, 383 Mich 409, 413; 175 NW2d 706 (1970). And although an exception exists allowing third parties to be "joined in the divorce action only if they have conspired with one spouse to defraud the other spouse of a property interest," that exception did not apply to Estes. *Estes*, 481 Mich at 583.

*Estes* and *Yedinak* make clear that, as a general rule, "a divorce court lacks jurisdiction to adjudicate the rights of third-party creditors." *Souden v Souden*, 303 Mich App 406, 410; 844 NW2d 151 (2013). When a person other than the husband or wife claims an interest in divorce proceedings, intervention is not permitted, and the third-party claimant must rely on other proceedings to pursue the claim. See, e.g., *Cassidy v Cassidy*, 318 Mich App 463, 494-495; 899 NW2d 65 (2017) (discussing earlier caselaw requiring wife's parents to file independent action to recover money loaned to the husband and wife); *Killingbeck v Killingbeck*, 269 Mich App 132, 140 n 1; 711 NW2d 759 (2005) (indicating that biological father's only recourse was a paternity action, rather than intervention in divorce proceedings between biological mother and her husband).

Plaintiff and defendant were the only proper parties in this action for separate maintenance. There was no suggestion that DHHS conspired with either party to defraud the other, so DHHS's involvement in this case does not fall within the narrow fraud exception for third-party joinder. Rather, DHHS moved for reconsideration of the support order on the basis that it improperly placed the financial burden of defendant's long-term care on DHHS. The trial court did not abuse its discretion by denying DHHS's motion for reconsideration. Like any other person claiming to be adversely affected by the support order, DHHS had to pursue a remedy through means other than involvement in the divorce proceedings.

Contrary to plaintiff's position on appeal, however, our conclusion that the trial court's ruling was within the range of principled outcomes does not end our analysis. Another important question remains: Can DHHS still challenge the merits of the support order as an aggrieved party with appellate standing?

*Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286; 715 NW2d 846 (2006), is the predominant authority addressing appellate standing. After petroleum released by the defendant migrated to neighboring property, the landowner plaintiff and his insurer filed a cost-recovery action under the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 *et seq*. *Id*. at 288-289. The trial court granted summary disposition in favor of the defendant, concluding that the action was time-barred, and this Court affirmed. *Id*. at 289. The parties did

not timely appeal this Court's decision. *Id.* The Attorney General, however, on behalf of the people of the state and the Michigan Department of Environmental Quality, filed an application for leave to appeal in the Michigan Supreme Court as an intervening appellant, arguing that this Court misconstrued the NREPA. *Id.* at 289. The Supreme Court granted the application, but declined to address the merits of the Attorney General's position because there was no justiciable controversy and neither of the losing parties below pursued a timely appeal. *Id.* at 289, 297.

In reaching this conclusion, the Court explained that a party seeking appellate relief must be an "aggrieved party," and this requirement was analogous to the requirement of standing to initiate proceedings before a trial court. *Id.* at 290-291. The Court continued:

> "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *In re Estate of Trankla*, 321 Mich 478, 482; 32 NW2d 715 (1948), citing *In re Estate of Matt Miller*, 274 Mich 190, 194; 264 NW 338 (1936). An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case. [*Federated Ins Co*, 475 Mich at 291-292 (footnotes omitted).]

The Court reasoned that the Attorney General was not an aggrieved party because its general interest in proper enforcement of a statute was insufficient to confer standing. *Id.* at 291 n 4, 294. And although certain statutes gave the Attorney General broad authority to "prosecute, defend, and intervene in certain 'actions,' " the case "ceased to be an 'action' when the losing party below (plaintiffs) failed to file a timely application for leave to appeal in this Court." *Id.* at 294. That is, when the time for filing a timely application for leave to appeal expired, "the case ceased to be a justiciable controversy." *Id.*

In this case, DHHS's interest in this proceeding represented more than a general interest in proper application of the domestic-relations statutes. DHHS alleged that, as a result of the purportedly invalid support order, it would be burdened with the cost of defendant's long-term care when defendant would not otherwise qualify for Medicaid benefits because of the extent of his assets. This financial burden arose from the support order, rather than the underlying facts of the case, i.e., the status of the parties' marriage. We will assume, for purposes of this analysis, that DHHS was an aggrieved party with appellate standing.

Even if DHHS has appellate standing, it did not follow the appropriate procedural requirements to challenge the support order on appeal. In *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 573; 957 NW2d 731 (2020) (*LWV*), the Legislature filed an application for leave to appeal to the Michigan Supreme Court after none of the parties pursued an appeal from this Court's judgment. Because the Legislature was not a party to the trial court proceedings or the appeal in this Court, it moved to intervene to become a party to the action. *Id.* at 574. The Supreme Court distinguished *LWV* from *Federated Ins Co* on the basis that the Legislature in *LWV* was an aggrieved party. *Id.* at 576-578. In doing so, it clarified that a

justiciable controversy can exist "if the losing parties below failed to file a timely appeal but a party with appellate standing filed a timely motion to intervene (i.e., before the deadline to file an application for leave to appeal)." *Id*. at 576.

Here, DHHS never moved to intervene. Notably, in *Burton-Harris v Wayne Co Clerk*, 508 Mich 985; 966 NW2d 349 (2021) (*Burton-Harris II*), the Supreme Court vacated much of this Court's opinion in *Burton-Harris v Wayne Co Clerk*, ___ Mich App ___; ___ NW2d ___ (2021) (Docket No. 353999) (*Burton-Harris I*), because the appellant in this Court, Robert Davis, was denied intervention in the trial court proceedings and did not move to intervene in this Court. *Burton-Harris II*, 508 Mich at 985. Citing *LWV*'s conclusion that an aggrieved party "*upon intervening*, has standing to appeal," *LWV*, 505 Mich at 579 (emphasis added), the Supreme Court explained that having failed to successfully intervene below and without moving to intervene in this Court, Davis "was never a party in this case, and thus could not seek appellate review of the trial court's denial of the plaintiff's request for mandamus and declaratory relief," *Burton-Harris II*, 508 Mich at 985. "Accordingly, the Court of Appeals should not have considered those issues," as the only issue properly before this Court in Davis's appeal was the denial of his motion to intervene in the trial court proceedings. *Id*. The same rationale applies here because DHHS never moved to intervene in this case, either before the trial court or on appeal. Thus, like in *Burton-Harris*, the only issue properly before this Court is the trial court's denial of DHHS's motion for reconsideration.[2]

The trial court did not abuse its discretion by denying reconsideration on DHHS's motion because DHHS could not be joined as a party to the separate maintenance action, nor could its rights be adjudicated in that action. Consistent with the Supreme Court's order in *Burton-Harris II*, this Court will not address the merits of DHHS's stated issues because DHHS did not take the appropriate procedural steps to submit those issues for appellate review.

Affirmed.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien
/s/ Noah P. Hood

---

[2] DHHS cites *Mathew R Abel, PC v Grossman Investments Co*, 302 Mich App 232; 838 NW2d 204 (2013), for the proposition that an appellant need not be a party to the trial court proceedings to be an aggrieved party with standing to appeal. *Abel* specifically concluded that intervention in the trial court proceedings "is simply not a necessary prerequisite for standing to appeal *an attorney fee award*," *id*. at 242 (emphasis added), and did not discuss appellate intervention procedure. And to the extent any conflict exists between *Abel* and *Burton-Harris II*, the Supreme Court's order in *Burton-Harris II* is binding on this Court because it was a final disposition of an application and "contains a concise statement of the applicable facts and reasons for the decision . . . ." *Dykes v William Beaumont Hosp*, 246 Mich App 471, 483; 633 NW2d 440 (2001).