*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

MATTHEW WILK,

       Plaintiff-Appellant,

v

THE STATE BANK and RONALD JUSTICE,

       Defendants-Appellees.

UNPUBLISHED
August 18, 2022

No. 357707
Wayne Circuit Court
LC No. 20-11229-CD

---

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

MARKEY, P.J. (*dissenting*).

I must dissent because the majority's ruling is totally contrary to the plain and unambiguous language of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*, more particularly MCL 15.362, and contrary to our Supreme Court's opinion in *Pace v Edel-Harrelson*, 499 Mich 1; 878 NW2d 784 (2016). I also conclude that plaintiff has not alleged a cognizable claim for wrongful discharge in violation of Michigan public policy. I would affirm the trial court's order granting summary disposition in favor of defendants.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). We also review de novo questions concerning the interpretation and application of a statute. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). MCR 2.116(C)(8) provides for summary disposition when a "party has failed to state a claim on which relief can be granted." A motion under subrule (C)(8) tests the legal sufficiency of a complaint. *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020). A trial court is only permitted to consider the pleadings when deciding a motion under MCR 2.116(C)(8). *Id.* All of the factual allegations contained in the complaint must be accepted as true. *Id.* And if no factual development could possibly justify recovery, the trial court should grant the motion. *Id.*

In *Slis v Michigan*, 332 Mich App 312, 335-336, 956 NW2d 569 (2020), this Court recited the well-established principles governing statutory construction, observing as follows:

> This Court's role in construing statutory language is to discern and ascertain the intent of the Legislature, which may reasonably be inferred from the words in

the statute. We must focus our analysis on the express language of the statute because it offers the most reliable evidence of legislative intent. When statutory language is clear and unambiguous, we must apply the statute as written. A court is not permitted to read anything into an unambiguous statute that is not within the manifest intent of the Legislature. Furthermore, this Court may not rewrite the plain statutory language or substitute its own policy decisions for those decisions already made by the Legislature.

MCL 15.362 provides, in pertinent part, that "[a]n employer shall not discharge . . . an employee . . . because the employee . . . reports . . . a violation or a suspected violation of a law . . . ., unless the employee knows that the report is false . . . ." The *Pace* Court, construing MCL 15.362, held:

> MCL 15.362 states that the WPA applies to employees who report "a violation or a suspected violation of a law" to a public body. We agree with the Court of Appeals that a plaintiff need not necessarily report an actual violation of a law to receive protection under this provision, as MCL 15.362 explicitly provides protection for "a suspected violation of a law." Nonetheless, we disagree with the Court of Appeals to the extent it held that, where an employee has a good faith and reasonable belief that a violation of the law is being actively planned, the report of that belief is sufficient to trigger the protections of the WPA.

> The reference in MCL 15.362 to "a violation or a suspected violation of a law" plainly envisions an act or conduct that has actually occurred or is ongoing. A common dictionary defines "violation" in part as the act of violating: the state of being violated. This definition contemplates an existing act that has occurred or is ongoing. That is, a violation or a suspected violation refers to an existing violation. The provision must therefore be read in the context of some conduct or act that has already occurred or is occurring, and not some conduct or act that may or may not occur. MCL 15.362 contains no language indicating that future, planned, or anticipated acts amounting to a violation or a suspected violation of a law are included within the scope of the WPA. Consequently, a stated intention to commit an act amounting to a violation of a law in the future does not constitute "a violation or a suspected violation of a law" for purposes of MCL 15.362 as a matter of law. [*Pace*, 499 Mich at 7-8 (quotation marks, citations, alteration brackets, and ellipsis omitted).]

The majority relies on language in the complaint in which plaintiff alleged that defendants had made and approved a decision to retroactively reduce the fee-share percentage from 10% to 5% and that the decision had "set in motion the accounting and other computations that were necessary to execute the illegal, lower fee-share payments by July 29, 2020." But, very importantly, plaintiff did not allege that defendants had in fact executed the fee-share-reduction decision. Indeed, plaintiff alleged—and thus admitted—that on July 29, 2020, he was paid "his full 10% fee-share compensation." There was no allegation that plaintiff only received a 5% fee-share amount. Patently, defendants never implemented its proposal and had, instead, opted to adhere to its original compensation schedule, the precise one plaintiff expected and received.

-2-

In *Pace*, the plaintiff claimed that the defendant operations manager had intended to unlawfully use "grant money to purchase a stove for her daughter." *Pace*, 499 Mich at 3. In rejecting the WPA claim, the Court stated that there was "no indication in the record that plaintiff reported . . . her belief that [the operations manager] had *already purchased* the stove." *Id.* at 9 (emphasis added). Here, once again, there was no allegation in the complaint that defendants had already paid plaintiff a reduced fee-share or that plaintiff suspected that defendants had paid him a reduced amount. To the exact contrary, the allegations included the affirmative assertion that the appropriate 10% fee-share had been paid. There simply was no factual allegation of a *violation or suspected violation* of the wages and fringe benefits act (WFBA), MCL 408.471 *et seq.* The allegations that the majority rely on merely speak of future, planned, anticipated, or intended acts that would amount to a violation or suspected violation of the WFBA, which does not suffice. *Pace*, 499 Mich at 8. Proposing to cut the fee-share compensation and setting in motion the accounting and other computations to do so did not constitute a violation of the WFBA. A violation would only have occurred had the 10% fee-share payment not been made when legally due. See MCL 408.472; MCL 408.473. How could it be otherwise? Therefore, the trial court properly granted summary dismissal of the WPA claim, and I dissent from the majority's ruling to the contrary. Even if, for the sake of argument, the WPA should be designed to offer protection under the circumstances such as those that plaintiff alleges, it currently does not do so. It is the Legislature's prerogative and function to amend the WPA to broaden its scope and offer greater protection if it so chooses. In turn, it is totally improper for this Court to legislate from the bench. And, here, the WPA patently does not provide plaintiff a cognizable cause of action.

Next, I also conclude that plaintiff failed to allege a cognizable claim for wrongful discharge in violation of Michigan public policy. This claim is premised on the WFBA and the argument that the anti-retaliation provision of the WFBA, MCL 408.483(1), did not encompass plaintiff's conduct, thereby allowing resort to public policy as a basis for a wrongful discharge claim. The majority finds that plaintiff adequately stated a claim under the public policy exception to the at-will doctrine that applies when an "employee is discharged for exercising a right conferred by a well-established legislative enactment." *McNeil v Charlevoix Co*, 484 Mich 69, 79; 772 NW2d 18 (2009). Thus, an *exercisable right* in the relevant statutory scheme must be identified. Plaintiff alleged that he was exercising his rights under MCL 408.472 and MCL 408.473 by demanding to be paid the full 10% fee-share at the end of July 2020. MCL 408.472 and MCL 408.473 simply mandate the payment of wages and fringe benefits when due. They say nothing of an exercisable right to demand proper payment from an employer before payday. Accordingly, plaintiff failed to allege that he was discharged for exercising a right conferred by the WFBA. And the public policy claim therefore fails as a matter of law.

I would affirm the trial court's ruling granting defendants' motion for summary disposition under MCR 2.116(C)(8); consequently, I respectfully dissent.

/s/ Jane E. Markey