*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HULL, Minor.

FOR PUBLICATION
February 21, 2023
9:00 a.m.

No. 361537
Washtenaw Circuit Court
LC No. 20-000001-JG

*In re* T. M. HULL, Minor.

No. 361538
Washtenaw Circuit Court
Family Division
LC No. 16-000081-NA

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

YATES, J.

The Department of Health and Human Services (DHHS) appeals the trial court's order that reinstated a child protective proceeding (the NA case) concerning TH and instructed the DHHS to resume providing services to TH in that NA case after terminating TH's juvenile guardianship (the JG case). On appeal, the DHHS argues that the trial court lacked statutory authority to reopen the NA case and to order the DHHS to provide services. Because we conclude that the trial court had the legal authority to reinstate the NA case and direct the DHHS to resume providing services to TH even though TH had turned 18 years old, we affirm.

## I. FACTUAL BACKGROUND

In 2017, TH and her younger sister, DH, entered the foster-care system as minors because of abuse or neglect by their parents. Thus, the trial court had jurisdiction over both children in the NA case, and both children received services through the DHHS. In 2020, when TH was 16 years old, the trial court appointed Tracy Heston as the juvenile guardian for TH and her younger sister, DH, fulfilling the permanency goal after months under the trial court's jurisdiction in the NA case. In August 2021, TH turned 18 years old while in the guardianship and, primarily because of special needs that prevented her from living on her own, TH signed a young adult guardianship assistance extension agreement on August 17, 2021, extending her juvenile guardianship.

-1-

Several months later, TH was arrested for domestic violence against DH and Heston. Child Protective Services ordered TH not to return to the home because the agency deemed her to be a danger to DH, who was still a minor. On February 22, 2022, Heston petitioned the trial court to terminate her appointment as the juvenile guardian. The next day, the trial court ordered the DHHS to investigate Heston's petition for termination. The trial court thereafter conducted an emergency hearing to determine how to proceed on the petition and with TH, who still required assistance. The DHHS agreed that TH needed assistance until she turned 21 years old and likely beyond that, but it asserted that the trial court could not merely reopen TH's NA case and require the DHHS to offer services because NA cases only pertain to children under 18 years of age. The DHHS further insisted that TH could not just be switched to an extended foster-care placement because extended juvenile guardianships and extended voluntary foster-care services were mutually exclusive under the Young Adult Voluntary Foster Care Act (YAVFCA), MCL 400.641 *et seq*. Because TH was in a juvenile guardianship and not receiving foster-care services when she turned 18 years old, the DHHS argued that she was not eligible for extended foster-care services.

At a hearing on March 18, 2022, the trial court expressed its determination to terminate the guardianship only if it could reopen the NA case to ensure TH would not be left to fend for herself and "fall[ ] through the cracks." At a subsequent hearing on May 4, 2022, the trial court set forth its ruling on the record and then memorialized that ruling in a written order, which begins with the following language:

> 1. Pursuant to MCL 400.647: "A youth who exited foster care after reaching 18 years of age but before reaching 21 years of age may reenter foster care and receive extended foster care services."

> 2. Pursuant to MCL 712A.19a(9)(c)(17) [sic] After notice and hearing on a petition to revoke or permission to terminate the guardianship, if the court finds by a preponderance of evidence that continuing the guardianship is not in the child's best interests, the court shall revoke or terminate the guardianship and appoint a successor guardian ***or restore temporary legal custody to the department***. (Emphasis added.)

> 3. DHHS's claim that the court will lose jurisdiction when (if) the guardianship is terminated is without merit and was made without statutory support. Jurisdiction is determined by eligibility under the Young Adult Voluntary Foster Care Act and is only terminated under the Act when [TH] turns 21 or becomes ineligible.

> 4. The Juvenile Guardianship in case number 20-01 JG is terminated through no fault of [TH]. The breakdown of the guardianship Agreement results in the termination of the guardianship and the need for the IMMEDIATE reopening of Washtenaw County Circuit Court case number 16-81 NA.

The trial court then ordered the DHHS to provide services in the NA case, to file a treatment plan within two weeks, and to offer transportation for TH to and from school and related activities. The DHHS appealed.

## II. LEGAL ANALYSIS

The DHHS's challenge to the trial court's order instructing the DHHS to resume providing services to TH involves questions of jurisdiction and issues of law. Whether a trial court can assert jurisdiction over a child protective proceeding is a question of law we review de novo. *In re AP*, 283 Mich App 574, 590; 770 NW2d 403 (2009). The interpretation of statutes and court rules is also a question of law subject to de novo review on appeal. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). Applying these standards, we must decide whether the trial court had the authority to reinstate the NA case involving TH and direct the DHHS to resume providing services to TH after the trial court terminated TH's juvenile guardianship.

As initially implemented in Michigan, the foster-care system and the juvenile-guardianship system were both designed for youth who had not yet reached the age of 18. But the enactment of the YAVFCA in 2011 ushered in an extension of both systems to youth who have not yet reached the age of 21. Specifically, Article II of the YAVFCA, MCL 400.647, provides that a "youth who has exited foster care after reaching 18 years of age but before reaching 21 years of age may reenter foster care and receive extended foster care services." Similarly, Article III of the YAVFCA, MCL 400.665(1), states that the DHHS "may provide extended guardianship assistance for a youth, who is at least 18 years of age but less than 21 years of age, if the youth began receiving guardianship assistance at 16 years of age or older." Accordingly, TH could have received extended services as a participant in the foster-care system or the guardianship system. In fact, TH participated in both systems, first receiving foster care and then receiving services through her juvenile guardianship. When the trial court terminated the guardianship after TH turned 18, the trial court simply wanted to enable TH to receive extended foster-care services, instead of extended guardianship services, under the YAVFCA. The trial court accomplished that goal by reopening the NA case and issuing an order to the DHHS to furnish extended services to TH in that NA case.

The DHHS argues on appeal that the trial court lost jurisdiction over TH's NA case when it ordered that she be placed in juvenile guardianship, thus opening the JG case. Once the extended juvenile guardianship agreement expired, the trial court's jurisdiction over the JG case ceased, and therefore the trial court properly terminated its jurisdiction and closed the JG case. But the trial court had no statutory authority to maintain jurisdiction over TH once that happened because TH no longer qualified as a child. Because the trial court lacked jurisdiction to reopen TH's NA case, all orders entered since doing so are void. In response, the lawyer-guardian ad litem (LGAL) for TH contends that the trial court had the legal authority to reopen the NA case immediately after it terminated the JG case. Specifically, the LGAL insists that, under MCL 712A.19a(17), whenever a trial court terminates a juvenile guardianship, the court must "restore temporary legal custody to the" DHHS and that, under MCR 3.979(F)(5), "[j]urisdiction over the child under MCL 712A.2(b) is reinstated under the previous child protective proceeding upon entry of the order revoking the juvenile guardianship."

The DHHS concedes that the trial court had jurisdiction over TH in the NA case from its inception until the entry of the juvenile guardianship order. The DHHS further acknowledges that, pursuant to the YAVFCA, TH could receive extended services through the guardianship until she turned 21 years of age. See MCL 400.665(1). Additionally, the DHHS admits that TH could have received extended foster-care services under the YAVFCA if she had been under the jurisdiction of the trial court in the NA case when she turned 18 years of age. See MCL 400.647. The DHHS

-3-

nonetheless asserts that, because TH was in a guardianship rather than the foster-care system when she turned 18, she cannot now receive extended foster-care services. The trial court rejected that argument, and so do we.

When a court grants a motion to revoke a juvenile guardianship, as the trial court did in the case of TH, MCR 3.979(F)(5) tells the court to "enter an order revoking the juvenile guardianship and placing the child under the care and supervision of the Department of Human Services[.]" The language of MCR 3.979(F)(5) also states that "[j]urisdiction over the child under MCL 712A.2(b) is reinstated under the previous child protective proceeding upon entry of the order revoking the juvenile guardianship." That statement about jurisdiction is consonant with MCL 712A.19a(17), which provides that, "[a]fter notice and hearing on a petition to revoke or permission to terminate [a] guardianship, if the court finds by a preponderance of evidence that continuing the guardianship is not in the child's best interests, the court shall revoke or terminate the guardianship and appoint a successor guardian or restore temporary legal custody to the department" of Health and Human Services. Therefore, the revocation of the juvenile guardianship results in the return of jurisdiction over the child under MCL 712A.2(b), which grants authorization for child protective proceedings and foster-care services.[1]

Moreover, the first subsection of MCL 712A.2a, which is entitled "continuing jurisdiction beyond maximum age," states that, as a general matter, "if the court has exercised jurisdiction over a juvenile under [MCL 712A.2(a) or (b)], jurisdiction shall continue for a period of 2 years beyond the maximum age of jurisdiction conferred under [MCL 712A.2], unless the juvenile is released sooner by court order." MCL 712A.2a(1). The trial court released jurisdiction over TH in the NA case when it opened the juvenile guardianship, but an NA case is not necessarily limited to children under 18 years of age, see MCL 712A.2a(1), and the courts are not obligated to close an NA case when a youth turns 18 years old if it is not in the child's best interests to close the case at that point. If the NA case continues past the age of 18, as authorized under other Michigan laws, the funding stream will not automatically change. Thus, as long as TH's best interests and authority other than the YAVFCA—such as MCL 712A.2a(1)—would have dictated that TH's NA case could remain open after she turned 18 years old, then the NA case could also be reinstated after she turned 18.

The DHHS correctly notes that the YAVFCA, MCL 400.647, provides that "[a] youth who exited foster care after reaching 18 years of age but before reaching 21 years of age may reenter foster care and receive extended foster care services." From that language, the DHHS argues that the youth must have "exited foster care after reaching age 18" in order to be eligible for extended foster care under the YAVFCA, MCL 400.647, so TH was not eligible to reenter foster care after the trial court terminated the guardianship. But that reading ignores the fact that, in this case, TH would not be automatically placed into YAVFCA foster care; terminating the guardianship would

---

[1] The term "child" is not included in the general definitions of Chapter 712A of the Probate Code, see MCL 712A.1, but "child" is defined in MCL 712A.2a(8), which provides that, "as used in this chapter, 'child', 'minor', 'youth', or any other term signifying a person under the age of 18 applies to a person 18 years of age or older concerning whom proceedings are commenced in the court under [MCL 712A.2] and over whom the court has continuing jurisdiction under subsections (1) to (6)" of MCL 712A.2a.

merely result in reinstating the NA case, which could then potentially lead to an application for extended foster-care services under the YAVFCA. Indeed, MCL 712A.19a(17) indicates that one option after the termination of a juvenile guardianship is to return the youth to the temporary legal custody of the DHHS. The temporary nature of that legal custody implies that a subsequent path would follow, such as application for services under the YAVFCA.

Here, TH and her sister required support from the state in the form of the DHHS when their mother and father failed to provide them with safety and support. Eventually, the best interests of TH and her sister were served through a juvenile guardianship, rather than continuing foster care. For TH, that juvenile guardianship was extended on the basis of her unique needs and inability to live on her own for the foreseeable future. The intent of the drafters of the applicable statutes and court rules supports an approach that permits a trial court to reinstate a former NA case for a youth aged 18 to 20 whose extended guardianship was terminated. Accordingly, the trial court properly reinstated TH's NA case when it terminated her extended juvenile guardianship.

Affirmed.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ James Robert Redford

-5-