*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDON BAKER,

       Plaintiff-Appellant,

v

COSMETIC CAR COMPANY HOLDING, INC.,
doing business as CARMEDIC, COSMETIC CAR
COMPANY, LLC, D.A. BOOTH, LLC, DAVID A.
BOOTH, PJL, LLC, and JAMES PALAZZO,

       Defendants-Appellees.

UNPUBLISHED
July 28, 2022

No. 356879
Calhoun Circuit Court
LC No. 2019-000496-CZ

Before: MARKEY, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND[1]

Defendant, Cosmetic Car Company Holding, Inc., doing business as Carmedic, developed a paintless dent removal system for automobiles that involves the use of specialized tools to make dent-and-ding repairs. Carmedic operates through partnerships set up across the country with individuals selected and trained by Carmedic personnel. Partners in Carmedic, including defendants David Booth and James Palazzo, perform dent repairs at dealerships, body shops, and other locations within a designated territory. Partners effectively own and operate their own Carmedic businesses through separate and independent limited liability companies. New partners in Carmedic work under lead partners, who provide guidance, mentoring, and technical assistance.

---

[1] We shall set forth the background on the basis of documentary evidence in the record as viewed in a light most favorable to plaintiff and upon which plaintiff relies. We acknowledge that defendants cite documentary evidence contradicting much of plaintiff's evidence.

A lead partner shares in the revenue generated by a partner or partners working under the particular lead partner.[2] Booth aggressively recruited plaintiff to join Carmedic as a new partner. Booth hoped to be plaintiff's lead partner and have plaintiff work a portion of Booth's existing territory in southwest Michigan. We note that Palazzo is Booth's lead partner. According to plaintiff, he and Booth finally reached an agreement pursuant to which plaintiff would become a partner working under the tutelage of lead-partner Booth. Plaintiff testified that Booth promised him that he would earn at least $1,500 per week while working with Booth during a ride-a-along training period.

Initially, to become a new or junior partner in Carmedic and start operations, a person is required to attend two formal training sessions sponsored by Carmedic. A prospective partner must first complete a three-day leadership seminar immediately followed by a lengthy technical-and-business training course, where he or she learns how to fix dents and run the business. Carmedic charges individuals for the training and for the tools needed to make dent repairs. Plaintiff was enrolled in training sessions scheduled to take place out-of-state in March 2018. During the leadership seminar, plaintiff sustained an avulsion fracture to his left foot and a sprained left knee, which resulted in his being fitted with a cast that went from his toes to his upper thigh. Plaintiff almost immediately went back home to Michigan to be treated by an orthopedic specialist. Consequently, he did not complete the required training. Plaintiff asserted that Booth protested and was unhappy about plaintiff's decision to return home and miss the training. Plaintiff claimed that he was placed on work restrictions by his medical provider until May 30, 2018. According to Booth's deposition testimony, which plaintiff cites, Booth knew that plaintiff's inability to finish the training program in the spring of 2018 meant that plaintiff would have to wait until the next available training session in January 2019. Plaintiff testified that there were training sessions in April and May 2018, but he was still on restrictions at that time and could not attend. Plaintiff acknowledged that the next available training session was scheduled for January 2019.

Plaintiff asserted that on March 17, 2018, which was after the accident, Booth called plaintiff and stated that he and Palazzo did not wish to proceed with plaintiff as a partner. Booth supposedly informed plaintiff that it would hurt his business if Booth had to wait until January 2019 for plaintiff to complete his training and thereafter start generating revenue. Plaintiff then complained to Carmedic CEO, Derrick Thayn, and Thayn countermanded Booth's decision, indicating that Carmedic still wished to move forward with plaintiff as a partner. Plaintiff contended that Booth then went on a "whisper" campaign, spreading lies about plaintiff within the organization and telling others that plaintiff was not communicative.

---

[2] Plaintiff describes the partnership structure at Carmedic as follows:

> The more partners a particular Carmedic [partner] can bring in under him in the business, then the more passive revenue flows upstream to him and others, and then ultimately to Carmedic itself. This revenue stream can quite literally go on forever and some Carmedic[] [partners] have as many as 70 partners working under them. [Record citations omitted.]

Plaintiff maintained that in August 2018, Booth again informed plaintiff that he was out as a partner, but Thayn, once again, reversed Booth's decision and told plaintiff that Thayn would still like to see plaintiff become a partner. Plaintiff asserted that in October of 2018, Booth, in an effort to get plaintiff to back out of the arrangement, communicated to plaintiff that he would not receive or earn $1,500 per week and might perhaps make as little as $40 per day. Plaintiff additionally claimed that Booth continued scheming and providing false information to Thayn about plaintiff. According to plaintiff, on October 9, 2018, Thayn expressed to plaintiff that a partnership opportunity remained available to plaintiff and that a meeting would be held on November 8, 2018, between Thayn, plaintiff, and Carmedic's founder. Plaintiff asserted that Booth then contacted plaintiff's former girlfriend, with whom plaintiff was engaged in a bitter custody battle, to solicit negative stories about plaintiff, which Booth shared with Thayn. But the November 8th meeting still took place, and plaintiff indicated that he was told that Carmedic would be proceeding with plaintiff's training in January 2019. Plaintiff testified that he completed and returned a Carmedic application on November 14, 2018. On January 8, 2019, which was the day before plaintiff was going to restart his training, Thayn sent plaintiff an e-mail informing him that Carmedic would not provide him with the training necessary to become a partner and that he was terminated from further involvement in the partnership-track program. Plaintiff points to evidence that Thayn, Booth, and Palazzo acknowledged having discussions about terminating plaintiff, but that they supposedly could not recall any specifics of their talks, which plaintiff deemed highly suspicious and suggestive of malfeasance. Thayn claimed that plaintiff was no longer considered for a partnership because the relationship between plaintiff and Booth had deteriorated to the point where it was unsalvageable and there was no longer any trust.

Plaintiff filed suit against defendants in February 2019. Plaintiff alleged that Carmedic's business constituted a place of public accommodation and that defendants violated the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, by refusing to work with and accommodate plaintiff on the basis of his disability, i.e., his injured foot and knee. Plaintiff additionally asserted a claim of tortious interference with a business relationship. Defendants moved for summary disposition, and the trial court granted the motion pursuant to MCR 2.116(C)(10) with respect to both causes of action.[3]

The trial court explained that plaintiff's "claim under the PWDCRA fail[ed] because there [was] no evidence sufficient to create a genuine issue of material fact that he was a disabled person whose disability was unrelated to his ability to utilize and benefit from a place of public accommodation." The court found that plaintiff's injury had prevented him from attending training sessions for a number of months and that plaintiff had improved enough by May 2018 such that he could return to work with no restrictions. The trial court observed that this Court had held that a "disability" under the PWDCRA requires "some sense of permanency." Therefore, the court determined that plaintiff was not a person with a disability under the PWDCRA because his injury was too short-lived. Furthermore, the trial court found that even if plaintiff were disabled for purposes of the PWDCRA, he was unable to complete any training sessions in 2018; consequently, plaintiff's injury was not unrelated to his ability to utilize and benefit from a place

---

[3] The trial court denied earlier motions for summary disposition in which defendants argued that plaintiff failed to state a claim and that the court lacked jurisdiction.

of public accommodation. Finally, the trial court ruled that plaintiff could only allege a failure to accommodate if he had notified defendants in writing of his need for accommodation and that plaintiff had not made a written request for accommodation. This appeal followed.

## II. ANALYSIS

### A. OVERVIEW OF PLAINTIFF'S ARGUMENTS

On appeal, plaintiff solely challenges the summary dismissal of the PWDCRA claim. Plaintiff argues that he was a person with a disability for purposes of Article 3 of the PWDCRA, that Carmedic's business constituted a place of public accommodation under Article 3, and that there existed numerous factual issues regarding whether the denial of a partnership for plaintiff was based on his disability or history of disability.

### B. STANDARD OF REVIEW AND PRINCIPLES GOVERNING (C)(10) MOTIONS

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). We also review de novo questions concerning the interpretation and application of a statute. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

MCR 2.116(C)(10) provides for summary disposition when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion under subrule (C)(10) tests the factual support for a party's cause of action. *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020). A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmoving party, demonstrate that there is no genuine issue with respect to any material fact. *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A trial court may not assess credibility, weigh the evidence, or resolve factual disputes, and when material evidence conflicts, it is not appropriate for the court to grant a motion for summary disposition. *Ass'n of Home Help Care Agencies*, 334 Mich App at 684 n 4. "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "Affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion . . . shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6); see also *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999) (a court may only consider substantively admissible evidence actually proffered by the parties when ruling on a motion).

## C. STATUTORY CONSTRUCTION

In *Slis v Michigan*, 332 Mich App 312, 335-336, 956 NW2d 569 (2020), this Court recited the well-established rules applicable to statutory interpretation, stating as follows:

> This Court's role in construing statutory language is to discern and ascertain the intent of the Legislature, which may reasonably be inferred from the words in the statute. We must focus our analysis on the express language of the statute because it offers the most reliable evidence of legislative intent. When statutory language is clear and unambiguous, we must apply the statute as written. A court is not permitted to read anything into an unambiguous statute that is not within the manifest intent of the Legislature. Furthermore, this Court may not rewrite the plain statutory language or substitute its own policy decisions for those decisions already made by the Legislature. [Citations omitted.]

## D. DISCUSSION AND RESOLUTION

"The opportunity to obtain employment, housing, and other real estate and *full and equal utilization of public accommodations*, public services, and educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right." MCL 37.1102(1) (emphasis added). And "a person shall accommodate a person with a disability for purposes of . . . public accommodation unless the person demonstrates that the accommodation would impose an undue hardship." MCL 37.1102(2). Article 3 of the PWDCRA, MCL 37.1301 *et seq*., addresses places of public accommodation. A "place of public accommodation" is defined as "a business, educational institution, refreshment, entertainment, recreation, health, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.1301(a). MCL 37.1302 provides, in pertinent part:

> Except where permitted by law, a person shall not:
>
> (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids.

In the general definitional section of the PWDCRA, the Legislature set forth the following definition of "disability" in MCL 37.1103(d):

> "[D]isability" means 1 or more of the following:

(*i*) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

* * *

(B) For purposes of article 3, is unrelated to the individual's ability to utilize and benefit from a place of public accommodation or public service.

* * *

(*ii*) A history of a determinable physical or mental characteristic as described in subparagraph (i).

(*iii*) Being regarded as having a determinable physical or mental characteristic described in subparagraph (i).

Under MCL 37.1103(l)(*ii*), " '[u]nrelated to the individual's ability' means, with or without accommodation, an individual's disability does not prevent the individual from . . . utilizing and benefiting from a place of public accommodation . . . ."

In our view, the parties and the trial court have made this case much more complicated than necessary. First, we easily conclude that Carmedic is a place of public accommodation. MCL 37.1301(a) (defining "place of public accommodation"); *Haynes v Neshewat*, 477 Mich 29, 37; 729 NW2d 488 (2007) (construing the nearly identical definition of "place of public accommodation" found in MCL 37.2301[a], which is part of the Elliott-Larsen Civil Rights Act [CRA], MCL 37.2101 *et seq*.). Carmedic is a business that offers dent-repair services to the public. And we will assume for purposes of this appeal that were a person with an indisputable disability as defined in the PWDCRA to seek a Carmedic partnership and then be denied a partnership solely because of the disability, an action under Article 3 of the PWDCRA would be warranted.

In this case, the gravamen of plaintiff's lawsuit is that he was denied a Carmedic partnership because of his alleged disability, i.e., the injury to his left foot and knee. The purported wrong occurred in January 2019 when plaintiff was denied participation in the scheduled training session. There is evidence that Booth attempted to quash plaintiff's further involvement in Carmedic in March 2018 and throughout the remainder of 2018, and that he also actively engaged in conduct to undermine a partnership for plaintiff. But Booth's efforts were countermanded by Thayn. And plaintiff had no basis to file suit until Thayn ultimately decided to stop the process and preclude any training. Accordingly, for purposes of MCL 37.1302, we must examine whether plaintiff was denied the full and equal enjoyment of further pursuing a partnership in January 2019 because of a disability.

There is no issue of fact that by January 2019, plaintiff had mostly recovered from his physical injury and was ready to participate in the scheduled training session and become a partner. Therefore, he was not suffering from a disability when he was denied access to the training and not allowed to proceed on a partnership track. See MCL 37.1302(a); MCL 37.1103(d)(*i*)(B). But Article 3 of the PWDCRA defines "disability" as encompassing, in part, "[a] *history* of a

determinable physical characteristic . . . ." MCL 37.1103(d)(*ii*) (emphasis added). This then takes us back to the time of plaintiff's original scheduled training in March 2018. There plainly was evidence of a physical characteristic, immobility, that resulted from an injury. MCL 37.1103(d)(*i*) and (*ii*). And while the nature of plaintiff's injury—without accommodation—was *related* to plaintiff's ability to operate a partnership, i.e., he could not complete the training required to obtain a partnership, the injury—with accommodation—was *unrelated* to plaintiff's ability to operate a partnership, i.e., he could complete the training required to obtain a partnership. See MCL 37.1302(a); MCL 37.1103(d)(*i*)(B). The "accommodation" was to reschedule plaintiff's training for a later date. Indeed, the evidence established that Carmedic, through CEO Thayn, specifically agreed to the accommodation, and plaintiff was scheduled to begin his new training session in January 2019; there is no genuine issue of fact on that matter.

This appeal then boils down to whether there exists a genuine issue of material fact regarding whether defendants, in January 2019, denied plaintiff the full and equal enjoyment of a partnership because of the injury in March 2018 and plaintiff's disability status in March-May 2018. We recognize that absent the injury, plaintiff in all likelihood would have completed his training and become a partner working with Booth. Also, there was evidence that Booth wanted plaintiff out as a partner because of the deleterious economic impact on Booth that would ensue from the delay in plaintiff's becoming a partner—a delay caused by plaintiff's injury and disability.[4] It is quite clear from the record that the relationship between plaintiff and Booth had eventually deteriorated to the point that the men no longer trusted each other. Plaintiff additionally cites evidence that in his view rules out any legitimate, non-discriminatory reason for ending his quest for a partnership. This evidence countered negative claims made by Booth regarding plaintiff's conduct.

We opine that there is a distinction between the denial of the partnership on the basis of circumstances that developed as a result of the disability and the denial of the partnership on the basis of the disability itself, the latter of which (under our assumptions) solely might trigger liability under MCL 37.1302(a). The evidence indisputably revealed that Thayn was the decisionmaker on whether plaintiff could proceed with the training and a partnership.

---

[4] We do note that there is no indication that there was another prospective partner waiting in the wings for Booth; consequently, we question what gain would have come to Booth by pushing for plaintiff's removal, especially late in 2018 when the January 2019 training was close at hand.

And there is no evidence, just speculation, that Thayn decided to bar plaintiff from participating in the training and becoming a partner because plaintiff had been disabled in the spring of 2018.  In sum, we conclude that the trial court properly granted summary disposition in favor of defendants.

We affirm.  Having fully prevailed on appeal, defendants may tax costs under MCR 7.219.


/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Michael J. Riordan