*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN PHYSICAL & OCCUPATIONAL THERAPY,

        Plaintiff-Appellant,

v

PROGRESSIVE MARATHON INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
August 24, 2023

No. 361977
Wayne Circuit Court
LC No. 21-008020-NF

Before: O'BRIEN, P.J., and CAVANAGH and MARKEY, JJ.

PER CURIAM.

Plaintiff, Michigan Physical & Occupational Therapy, appeals by delayed leave granted the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant, Progressive Marathon Insurance Company (Progressive), in this no-fault action. On appeal, plaintiff argues that the trial court erred by granting summary disposition because there existed a genuine issue of material fact regarding whether some of plaintiff's physical therapy services provided to the injured insured were reasonably necessary. We affirm.

## I. BACKGROUND

This case arises from an automobile accident on January 10, 2020, in which Rwia Habbo sustained injuries to her back and neck. At the time of the accident, Habbo was covered by a no-fault insurance policy issued by Progressive. Plaintiff began providing physical therapy services to Habbo on March 23, 2020, pursuant to a prescription written by family-medicine physician Dr. Naveed Siddique. By September 23, 2020, Habbo was still receiving physical therapy from plaintiff for her accident-related injuries. During that six-month period in which Habbo received services from plaintiff, Progressive paid plaintiff $48,103 in no-fault personal protection insurance (PIP) benefits. Plaintiff continued to provide Habbo with physical therapy services for another year—into September 2021, with Dr. Siddique writing prescriptions for the therapy covering that entire period, the last of which was written in June 2021. In total, Habbo visited plaintiff 177 times to receive physical therapy. Progressive's position, ultimately, was that the services provided by

-1-

plaintiff after September 23, 2020, were not reasonably necessary. MCL 500.3107(1)(a) states that PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for *reasonably necessary* products, *services* and accommodations for an injured person's care, recovery, or rehabilitation." (Emphasis added.)

On June 30, 2021, because Progressive had stopped making PIP payments, plaintiff filed suit against the insurer alleging that Progressive violated its obligations under the no-fault act, MCL 500.3101 *et seq.*, by refusing to pay PIP benefits for all of the medical services that plaintiff provided to Habbo. On December 28, 2021, Progressive moved for summary disposition under MCR 2.116(C)(10), arguing that any claims for payment relative to services rendered after the first six months of treatment should be dismissed because those services were not reasonably necessary. Progressive relied on deposition testimony by Dr. Siddique which indicated, in part, that more than six months of physical therapy would not ordinarily be necessary for Habbo's muscle strains. Progressive also relied on a report prepared by Dr. Saul Weingarden, who performed an independent medical examination of Habbo. Dr. Weingarden opined that physical therapy was only reasonably necessary for a short period, even far less than six months. Plaintiff responded that all of the physical therapy was reasonably necessary, pointing to Dr. Siddique's testimony in which he indicated, in part, that all of the physical therapy was reasonably necessary and that he had written prescriptions for the therapy. We shall explore details of Dr. Siddique's ostensibly conflicting deposition testimony in the analysis section of this opinion. Following a hearing on Progressive's motion for summary disposition held on February 8, 2022, the trial court ruled from the bench:

> Dr. Siddique admitted that, depending on the severity of the patient's injury, it would be reasonably necessary for the patient's physical therapy to extend past six months, however, there is nothing that indicated that plaintiff's injuries were such that it was so severe that . . . more than six months of physical therapy would be necessary. At this stage, there is simply no evidence provided by the plaintiff that would create a question of fact. So, for those reasons, the Court is going to grant defendant's motion for summary disposition.

The following day the trial court entered an order granting Progressive's motion for summary disposition for the reasons stated on the record. Over three months later, on May 25, 2022, plaintiff moved for reconsideration, presenting for the first time some of the written prescriptions, MRI reports diagnosing herniation of the spine, and physical therapy notes about Habbo's neck and back pain and her stiffness complaints. The trial court denied the motion for reconsideration because plaintiff raised the same issues that had already been ruled on by the court and because plaintiff failed to demonstrate palpable error. The court also observed that the motion was untimely.

Plaintiff filed a claim of appeal on June 23, 2022, which was dismissed for lack of jurisdiction given that the motion for reconsideration had not been timely filed. *Mich Physical & Occupational Therapy v Progressive Marathon Ins Co*, unpublished order of the Court of Appeals, entered June 29, 2022 (Docket No. 361912). Even before that order was entered, plaintiff filed a delayed application for leave to appeal on June 28, 2022, which was within six months of entry of the order granting summary disposition, and, over Progressive's objection, this Court granted leave to appeal. *Mich Physical & Occupational Therapy v Progressive Marathon Ins Co*, unpublished

order of the Court of Appeals, entered November 28, 2022 (Docket No. 361977). On appeal, Progressive, acknowledging that this Court had the discretion to grant the delayed application, complains that plaintiff failed to explain the length of the delay as required by MCR 7.205(4)(b); therefore, the delayed application should have been rejected. Progressive indicates that it raises this issue simply to preserve it for any potential future appellate relief, and it is so noted.

## II. ANALYSIS

### A. STANDARD OF REVIEW AND SUMMARY DISPOSITION PRINCIPLES

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). We also review de novo questions with respect to the interpretation and application of a statute. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).[1]

In *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506-507; 991 NW2d 230 (2022), this Court set forth the guiding principles in analyzing a motion brought pursuant to MCR 2.116(C)(10):

> MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in

---

[1] In *Slis v Michigan*, 332 Mich App 312, 335-336; 956 NW2d 569 (2020), this Court recited the well-established principles regarding statutory interpretation, stating as follows:

> This Court's role in construing statutory language is to discern and ascertain the intent of the Legislature, which may reasonably be inferred from the words in the statute. We must focus our analysis on the express language of the statute because it offers the most reliable evidence of legislative intent. When statutory language is clear and unambiguous, we must apply the statute as written. A court is not permitted to read anything into an unambiguous statute that is not within the manifest intent of the Legislature. Furthermore, this Court may not rewrite the plain statutory language or substitute its own policy decisions for those decisions already made by the Legislature. [Citations omitted.]

this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party. Speculation is insufficient to create an issue of fact. A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. [Quotation marks, citations, and brackets omitted.]

## B. DISCUSSION AND RESOLUTION

Plaintiff's argument on appeal is fairly cursory. It contends that a genuine issue of material fact exists regarding whether the physical therapy beyond the six-month mark was reasonably necessary in light of Dr. Siddique's testimony in which he indicated that all of the physical therapy was reasonably necessary and that he had written prescriptions for the therapy. Plaintiff maintains that Progressive seized on testimony by Dr. Siddique regarding hypothetical patients that were not pertinent to Habbo's particular physiological circumstances. We note that plaintiff's argument does not reference any evidence other than Dr. Siddique's deposition testimony.

Once again, MCL 500.3107(1)(a) provides that PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." "Where a plaintiff is unable to show that a particular, reasonable expense has been incurred for a reasonably necessary product and service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense." *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 50; 457 NW2d 637 (1990). In *Krohn v Home-Owners Ins Co*, 490 Mich 145, 158; 802 NW2d 281 (2011), our Supreme Court observed:

To provide guidance . . ., we observe that the no-fault act does not require coverage for all treatments. Obviously, treatments such as apricot pit therapy, coning (ear candling), homeopathy, magnet therapy and psychic surgery are patently unreasonable. Even if administered by licensed health-care providers, these so-called treatments not only lack a scientific basis to conclude that they are generally accepted by the medical community, but there is simply no basis to conclude that they are at all efficacious. On the other hand, we presume, subject to rebuttal, that services generally accepted by the medical community for treatment or care of a specific and diagnosed injury are reasonably necessary under MCL 500.3107(1)(a).

Dr. Siddique testified that Habbo came to him complaining of neck and lower back pain after her accident and that he diagnosed her with muscle strains. Dr. Siddique prescribed physical therapy for Habbo at her first appointment in an effort to improve her range of motion, increase her strength, and reduce her pain. When asked how long it usually takes for a person with back and neck muscle strains to recover, Dr. Siddique replied:

> It all depends, it depends on the severity of the injury. But for, you know, mild injuries like that, typically you're talking about six to eight weeks, you know, we should normally see an improvement, drastic improvement within maybe—I would stretch it to maybe three months.

And when asked how much physical therapy would typically be reasonable to treat such injuries, Dr. Siddique responded:

> Yeah, like I said, about eight weeks. And again, we can go up to 12 weeks, I think it's reasonable depending upon the severity. I guess the more severe it is you might extend to 12 weeks. But usually within six to eight weeks there should be somewhat substantial improvement with their pain and range of motion.

> \* \* \*

> If it's really bad, like a muscle tear, tendonitis,[2] I suppose it can go up to six months or so. But nine months seems like a little long to me.

Dr. Siddique testified that, off the top of his head, he could not think of anything he observed in his treatment of Habbo which indicated that she would need extended physical therapy or that she had a more severe injury than an ordinary muscle strain. But Dr. Siddique also noted that he did not have the results from the MRI that he had ordered for Habbo early in her treatment. Dr. Siddique confirmed that he wrote prescriptions for physical therapy for Habbo as late as 15 months after her initial treatment. Dr. Siddique testified that he wrote the June 2021 prescription because Habbo "was still in pain" and experiencing "reduced mobility." Immediately after those remarks and on questioning by plaintiff's counsel, Dr. Siddique affirmed his belief that physical therapy would be helpful to Habbo, expressly indicating that the prescribed therapy was reasonable and necessary. But Progressive's counsel then engaged in the following colloquy with Dr. Siddique:

> *Q.*      I think earlier you had said you thought nine months would be more than was needed here; is that fair to say?

> *A.*      Yes.

> \* \* \*

---

[2] There was no documentary evidence of a muscle tear or tendonitis.

-5-

*Q.* Okay. So I guess to boil it down, if nine months is more than needed, could you give us your best opinion as to how much you think would have been reasonable for Ms. Habbo based on what you know from treating her?

*A.* I don't know, it depends if she was—if she was in that much of pain, probably about six months, I would say three to six months given her specific condition and her specific scenario perhaps she needed a little bit extended physical therapy than average people would.

Plaintiff's counsel, having a final opportunity to question Dr. Siddique, asked him if he thought that the amount of therapy that he had prescribed for Habbo was reasonable and necessary, and Dr. Siddique responded:

I mean maybe she was making very slow progress *perhaps*. I don't remember exact conversations I'm having with the patient. So *perhaps* I'm giving her the benefit of the doubt and extending her physical therapy sessions. [Emphasis added.]

We conclude that Dr. Siddique's testimony was simply too tenuous, speculative, and inconsistent to create a genuine issue of material fact on the issue regarding whether the services for physical therapy after September 23, 2020, were reasonably necessary. His testimony often demonstrated uncertainty and unfamiliarity with respect to Habbo's particular circumstances that was not overcome by a conclusory agreement with plaintiff's counsel that the at-issue therapy was reasonably necessary. Prescribing physical therapy simply on the basis of—perhaps—giving Habbo the benefit of the doubt hardly equates to the prescription or therapy being characterized as reasonably necessary. Dr. Siddique's testimony certainly did not show that more than six months of physical therapy would generally be accepted as reasonable by the medical community for the treatment or care of Habbo's specific diagnosed injuries. See *Krohn*, 490 Mich at 158. Indeed, his testimony established just the opposite. Moreover, even accepting that plaintiff was making very slow or little progress does not serve as a logical basis to conclude that potentially endless continuation down the same mostly-unsuccessful road of treatment is reasonably necessary. If anything, it suggests that a different approach should be to be considered.

This Court in *Bakeman v Citizens Ins Co of the Midwest*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357195); slip op at 5-6, recently addressed a situation where there appeared to be an "internal conflict within a single deposition," and the panel stated:

Importantly, in the absence of a formal stipulation, a party is ordinarily entitled to the benefit of testimony in support of that party, even when there are inconsistencies or contradictory statements in the testimony of plaintiff or her witnesses, and even despite the party's expression of an opinion inconsistent therewith. Furthermore, the rule regarding conflicts between depositions and affidavits was designed to prevent parties from manufacturing factual questions for the purpose of surviving summary disposition. A single individual, testifying at a single deposition, is less likely to be trying to thwart a procedural rule, especially where that individual demonstrated a lack of guile. We are, in any event, unaware

-6-

of any reason why the courts should presume as a matter of course that either of two arguably contradictory statements, whether supporting or damaging the deponent or a party, is the true one. Rather, we adopt a case-by-case approach when analyzing arguably inconsistent deposition testimony. [Quotation marks, citations, and brackets omitted.]

This passage does not save plaintiff's lawsuit because Dr. Siddique's testimony ultimately failed to definitively and with adequate elaboration and explanation state that more than six months of physical therapy was reasonably necessary. We conclude that reversal is unwarranted.

We affirm. Having fully prevailed on appeal, Progressive may tax costs under MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Jane E. Markey